Haynes v. Meeks.

## HAYNES v. MEEKS.

A RESIGNATION is not a matter absolutely in the power of an administrator, to be made at any time he may choose.   The statute only confers upon him a conditional right to resign, and the statutory conditions must be complied with, or dispensed with by the Court, before a resignation tendered will take effect.

The appointment of a new administrator—the former administrator not having been removed nor his resignation accepted—is a void proceeding.

An existing administrator is not removed, simply by force of the appointment of another person as administrator.   The office must first become vacant before a second appointment can be made.

Where the law does not declare the vacancy as a consequence flowing from a particular event, a revocation of the letters of the first administrator—he being still living—is essential to the appointment of another person to succeed him. The only competent proof of a revocation of letters in such case is an order of the Court directing it.

The decision in this case on the former appeal, (10 Cal. 110) commented upon and disapproved, but held to be the law of the case under the doctrine of *Davidson* v. *Dallas*, (15 Cal. 75) and *Phelan* v. *San Francisco*, (20 Id. 39).

The authority of the Probate Court to order a sale of real property of an intestate is derived from the statute ; and can only be exercised in the cases specially designated.

The proceeding for the sale, though made in the general course of administration, is a distinct and independent proceeding in the nature of an action, of which the petition is the commencement, and the order of sale is the judgment.

The petition for the sale of real property must show on its face two things : 1st, the insufficiency of the personal property to pay the debts and charges against the estate ; 2d, the necessity of the sale of the real property, or some portions thereof, for that purpose; and both must appear before the Court can take jurisdiction of the proceeding.

The truth of the averments—their sufficiency appearing—is a matter which must be determined at the hearing of the petition, and the judgment of the Court thereon, if rendered upon legal notice, cannot be questioned collaterally.   It may be reviewed, and if erroneous, corrected on appeal, but not otherwise.

Haynes *v.* Meeks.

The necessity for the sale is not a matter for the executor or administrator to determine, but is a conclusion which the Court itself must draw from the facts stated, and the petition must furnish the materials for its judgment.

The petition must show the insufficiency of the personal property, not by mere averment, but by a statement of the facts as to its amount and disposition, and as to the outstanding debts and charges, as prescribed by section one hundred and fifty-five of the Act for the Settlement of the Estates of Deceased Persons, and must show also the necessity for the sale of the whole or some portion of the real property, not by mere averment of such necessity, but by a description of all the real property of which the intestate died seized, and a statement of its condition and value, as required by the same section.

An administrator is not relieved from a compliance, to the extent of his ability, with the statute, as to the statement of the personal property in his petition, by the fact that there has been a previous administrator of the estate. He must show not merely the personal property which has come into his possession since his appointment, but must also show, to the extent of his ability, that which came into the hands of his predecessor.

By our statute there are only two classes of administrators, special and general; and no such officer as an "administrator *de bonis non*" is known to our law. When the authority of a general administrator is terminated, and a new one appointed, the latter takes the place of the first—succeeds to the office, clothed with the same powers, and subject to the same restrictions—and when he invokes the action of the Court, must institute the same proceedings, and, so far as he is able, must make a similar showing.

Whether if funds have been received by an executor or administrator sufficient to pay the outstanding debts and expenses, a sale of the real estate for such payment can be ordered, even if the funds have been squandered or illegally disposed of—*Query.*

A petition filed by an administrator for the sale of real property belonging to the estate, averred that no personal property had come to his hands, and that there was none to his knowledge; that a former administrator of the same estate had disposed of the whole of it; that the petitioner, who was also a creditor, had made every effort in his power to collect from the former administrator the amount due to him on a judgment against the estate, without success—but did not state the amount of the personal property which had come to the hands of the former administrator, or what disposition had been made of it, or that any effort had been made to ascertain the disposition of it, or to compel the former administrator to account, nor the condition or value of the real estate of which the intestate died seized, nor the condition or value of the parcels described : *Held,* that it was fatally defective in its allegations respecting both the real and the personal property ; that the Court acquired no jurisdiction of the proceedings for the sale ; that the order to sell and the sale made in pursuance of it were void, and the purchaser acquired no title ; and that the invalidity of the sale, by reason of the defect in the petition, might be shown in bar of a recovery by the purchaser in ejectment against one claiming under a conveyance from the heirs.

APPEAL from the Twelfth Judicial District.

This is an action of ejectment to recover the possession of a lot situated within the limits of the city of San Francisco. Both parties claim title from the same source—from one George Harlan, who died in the county of Santa Clara in July, 1850. The plaintiff claims by a conveyance from Aspinwall, who is alleged to have been at the time the administrator of the estate, executed upon a sale made by order of the Probate Court in November, 1855. The defendant claims by a conveyance from the heirs of Harlan, executed in April, 1854. On the trial, it was admitted that Harlan was at the time of his death a resident of Santa Clara county ; that he left a widow, six children—three of whom were minors—and two grandchildren, sons of a deceased daughter; and that at the time of the commencement of this action the defendant was in possession of the premises. It was also admitted that Henry C. Smith was duly appointed by the Probate Court of Santa Clara county administrator of the estate of said Harlan, on the nineteenth day of August, 1850, and on the same day filed his bond, qualified, and commenced acting as administrator ; that he filed an inventory, allowed claims against the estate, sold property of the estate under orders of the Probate Court, and from time to time made report to the Court of his acts ; that on the fourteenth day of June, 1853, he applied to the Court for an order to sell certain real property of his intestate to pay the debts outstanding against the estate and the expenses of administration, and such proceedings were had upon his application that on the thirteenth of August, 1853, an order of sale was made by the Court, under which order said real estate was sold in September, 1853, for $19,240 ; that the sale was in October following confirmed by the Court; that on the twenty-ninth of November, 1853, a citation was issued by the Court to Smith, to appear and show cause why an attachment should not issue against him for failure to file his account for final settlement, and that on his failure to appear, an attachment was ordered December 26th, 1853. On the thirty-first of December, 1853, Smith filed the following written resignation : " Henry C. Smith, administrator of the estate of George Harlan, deceased, hereby resigns his appointment as such administrator, and asks that his resignation be received and he be discharged therefrom. H. C. Smith."

Thereupon, on the same day, the following order was made by the Probate Court:

" Now comes Henry C. Smith, administrator of the above estate, and files his resignation as administrator of said estate.    It is, therefore, ordered by the Court that the said Henry C. Smith do turn over to John Youtz, Public Administrator in and for the county of Santa Clara, all the papers and effects in his possession relating to said estate, and that he make a full and complete settlement of all his proceedings relating to said estate to the said John Youtz, Public Administrator as aforesaid, on or before the first day of the next term of this Court; and that when the said Henry C. Smith has fully made such settlement, he and his securities be released from any further liability on said estate.    It is further ordered by the Court, that said estate be placed into the hands of the said John Youtz, Public Administrator in and for the county of Santa Clara, for purposes of general administraton."    On the twenty-fourth of January, 1854, Smith presented to the Court what purported to be his final report of the condition of the estate, and of his proceedings therein, showing that he had received $28,357, had disbursed $20,017.13, had a balance in his hands of $8,340.87, and that there were still outstanding claims against the estate to the amount of about $6,300.    Objections to this account were made by certain of the creditors, after the hearing of which, the Court, on January 25th, 1854, made an order allowing the disbursements of Smith only to the amount of $14,600, and declaring a certain balance to be due to the creditors ; and after a recital that it appeared from said report that there were sufficient funds in the hands of said administrator to pay the debts of said estate found to be due, and which had been allowed, directing the administrator to pay all the debts without delay, and to make a final settlement on the first day of the next term, and containing, in reference to the order of December 31st, the following : " It is further ordered by the Court, that the order heretofore made on the thirty-first day of December, A. D. 1853, directing the said Henry C. Smith, as administrator of the estate of George Harlan, deceased, to turn over the said estate to the Public Administrator of Santa Clara county, and the order placing the said estate in the hands of said Public Administrator, be and the same hereby is revoked."

Smith did not make the settlement as directed at the February or March term of the Court, but appeared on the first day of April, in obedience to a citation which had been issued, and moved for leave to file a new report, which was granted, and at the same time auditors were appointed to examine his vouchers and accounts and report thereon to the Court, and an attorney was also appointed to represent the minor heirs. On the twenty-second of April, 1854, Smith presented a final account, approved by the auditors, which showed that he had received $28,657, had disbursed $21,584.50, and still had in his hands funds of the estate to the amount of $7,072.50; that there was a debt allowed and unpaid of $4,604.85, and that there was still certain personal property of the estate in his hands as administrator. On the twenty-fifth of April, the Court adopted this report, and ordered that Smith pay into Court the balance of $7,072.50, and also six hundred and thirty dollars, being the value of the personal property of the estate in his hands, which in his report was alleged to have been lost or stolen; and " that said administrator do at the same time hand into this Court all papers, deeds and whatsoever other property he may have in his possession belonging to the aforesaid estate."

Subsequently, Smith, upon affidavit, moved the Court to allow an item in his account of $1,000 for extra services and expenses as administrator, which motion, being opposed by the heirs, was heard on the twenty-second of May, 1854, and after the introduction of proofs, was disallowed by the Court. No further proceedings were had in the Probate Court in regard to the administration of the estate of Harlan by Smith, nor was any order made by the Court for his removal or discharge other than as above set forth.

On the eighteenth day of May, 1855, Benjamin Aspinwall presented to the said Probate Court a petition for letters of administration, of which the following is a copy:

" To the Honorable the Judge of said Court:

" The petition of Benjamin Aspinwall, of the county of San Francisco, respectfully shows, that George Harlan, late of the county of Santa Clara, is deceased; that he died, according to the best information and belief of your petitioner, sometime in the year 1850;

that he left no will; that he left the following named persons him surviving, who are heirs or next of kin to said deceased, viz: Joel Harlan, Jacob Harlan, Elisha Harlan, Catherine Harlan and others; that he left real and personal estate in the counties of Santa Clara and San Francisco, and also, as your petitioner believes, in the county of Alameda. Petitioner further shows, that in August, 1850, one H. C. Smith was by the Probate Court of Santa Clara county duly appointed administrator of the estate of said deceased, and undertook to administer said estate; that while he, said Smith, was so duly in the administration of said estate, your petitioner commenced a suit against him as such administrator in the District Court for the county of Santa Clara, in the State of California, on a claim your petitioner then held against said estate, and did, on the nineteenth day of July, 1853, obtain judgment in said Court against the said H. C. Smith, administrator of said estate, for the sum of $8,104.85, with interest at the rate of ten per cent. per annum, as appears of record in said Court, and to which your petitioner refers. On which judgment the said Smith, administrator as aforesaid, at different times has paid your petitioner the sum of $3,500, which is the only payment that has been made on said claim.

"Petitioner further shows, that on the twenty-fifth of January, 1854, the said Smith was cited to render a final account of his administration of said estate before the said Probate Court of Santa Clara county, and such proceedings were then and there had as appears of record; that the said Smith was adjudged to have sufficient funds in his hands belonging to said estate to pay all the debts due from said estate, and ordered said Smith to pay said debts, which he refused to do. Your petitioner further shows, that subsequently thereto he commenced a suit against said Smith and the sureties on his administration bond, in the Superior Court of the city of San Francisco, and recovered a judgment against them for the sum of $4,644.93 damages, besides costs; that he caused executions to be issued to the counties of Santa Clara and Alameda in order to collect the amount of his said judgment; that the said execution so issued to the county of Alameda, where said Smith resides, has been returned "*nulla bona*" wholly unsatisfied; and that your petitioner has as yet been unable to collect anything on the said execu-

tion so issued to the county of Santa Clara; and your petitioner believes, and so charges the fact, that the said Smith and his said sureties are all insolvent; all of which your petitioner is able to prove as he believes.   Your petitioner further shows, that the administration of the said estate by the said Smith has fully ceased and determined; that your petitioner has never received in payment of his said claim against said estate more than said $3,500. Your petitioner further shows, that there was due him on his said claim against said estate, in judgment as aforesaid, on the sixteenth day of March, 1854, the sum of $4,644.93, which bears an interest of ten per cent. per annum, which is wholly unpaid; that there is real estate in the city of San Francisco belonging to the estate of said Harlan, deceased, of the value of $15,000 or $20,000, which has never been administered, applied or sold for the payment of the debt of your petitioner, and which your petitioner avers ought to be sold by an order of this Court, and the proceeds of such sale be applied to the satisfaction and payment of his said claim.

" Wherefore, your petitioner respectfully prays that he may be appointed administrator of the unadministered part of the estate of said George Harlan, deceased, in the capacity of administrator ' de bonis non,' in order that any part of said estate yet remaining unsold may, by an order of this Court, in due and proper form obtained, be sold to pay the debt of your petitioner, and any other just debts against the said estate.

The petition was duly verified.

(Signed.)          " BENJ. ASPINWALL."

On the fifteenth day of June thereafter, the Court made the following order, appointing Aspinwall administrator :

"And now again comes Benjamin Aspinwall, by his attorney, L. Archer, and the matter of the application for letters of administration to issue to said Aspinwall as administrator ' de bonis non ' having been taken under advisement, the Court now finds, after hearing the proofs and allegations, that Henry C. Smith had been appointed by this Court administrator of said estate in the year 1850, but that said Smith has not fully administered upon the same; that there are debts still outstanding against said estate, and that there is a large amount of property belonging to said estate, and that

said estate has never been fully administered upon and divided among the heirs. The Court, therefore, grants the prayer of the petitioner. And it is ordered and decreed by the Court, that Benjamin Aspinwall be, and he is hereby appointed administrator ' *de bonis non* ' of all the goods, chattels and effects which remain unadministered upon of the estate of George Harlan, deceased; and it is ordered that the Clerk issue letters of administration to said Benjamin Aspinwall, upon his filing a good and sufficient bond, as required by law, in the sum of $5,000—said bond to be filed in twenty days from the date of this order."

Aspinwall filed the required bond and duly qualified August 8th, 1855. On the eleventh of August, Aspinwall filed his petition for the sale of real property of the estate, of which the following is a copy:

" In Probate Court for the county of Santa Clara. In the matter of the estate of George Harlan, deceased.

" To the honorable, the Probate Judge of said Court:

." The petition of Benjamin Aspinwall respectfully shows that he was duly appointed administrator *de bonis non* of all and singular the goods, chattels and effects of George Harlan, formerly of the county of Santa Clara, deceased, on the eighth day of August, 1855. That said estate has heretofore been partially administered by Henry Smith, whose time of administration has wholly ceased. That no personal estate has come to the hands of your petitioner; nor is there any personal property, to the best knowledge of your petitioner; the said Smith, as such former administrator, having disposed of the whole of the same. Your petitioner further shows that the following described real estate, lying and being in the city of San Francisco, belongs to and is the property of said estate, viz:

" That certain one hundred vara lot, numbered on the official map of the said city ten, and located on the south side of Mission street, between Second and Third streets, of the value of about eight thousand dollars. Also, the following lot, to wit, commencing at the northwest corner of the fifty-vara lot, numbered on the official map of the city of San Francisco three hundred and seventy-three; thence running easterly, on the northerly line of said fifty-vara lot, fifty-eight feet nine inches; thence southerly, on the westerly line of Union Place, thirty-six feet; thence westerly, at

right angles, thirty-five feet nine inches; thence southerly, at right angles, forty-one feet six inches; thence westerly, at right angles, twenty-three feet; thence northerly, at right angles, seventy-seven feet six inches, to the point of beginning—of the value of about four hundred dollars.

"Petitioner further shows, that he formerly recovered a judgment against the said estate, in the District Court of the State of California, for the county of Santa Clara, for about the sum of $8,000, as near as he can recollect. That said Smith, as administrator of said estate, has made two separate payments to your petitioner on said judgments, amounting to about the sum of $3,500. Petitioner avers that there was due to him from said estate, on said judgment claim, the sum of five thousand three hundred and five dollars and fifty-seven cents, on the nineteenth day of January, A. D. 1855, and that he is entitled to interest thereon from that date at the rate of ten per cent. per annum. That he has made every effort in his power to collect and recover said amount from the said Smith, as administrator, from said estate, and from the sureties on the administration bond of said Smith, but without avail or success. Petitioner further saith, that he is informed that one Joel Harlan, one of the heirs of the said deceased, has a claim against said estate; but of the amount or truth thereof your petitioner is not advised, and refers to the records of the said Probate Court, and to the proofs henceforth to be introduced, in respect to the same, if necessary. That there are no other claims or demands against said estate, to the knowledge of your petitioner. And further shows, that the following persons are the only heirs and next of kin of said deceased, to the knowledge of petitioner, namely: Mary Smith, daughter of the said deceased, wife of Henry Smith, of Alameda county; Joel Harlan, (son) of Alameda county; Nancy Huff, (daughter) wife of Lucius Huff, of Alameda county; Jerome Van Gorden and George Van Gorden, children under the age of twenty-one years, of Rebecca, daughter of said deceased, and wife of Ira Van Gorden—said Rebecca being dead—of Los Angeles county; George Harlan, Elisha Harlan and Sarah Ann Harlan, minors under the age of twenty-one years, sons and daughter of the said deceased; said Elisha residing in

Alameda county, said George and Sarah in Napa Valley. Your petitioner is informed and believes that said Joel Harlan is the general guardian of the said Elisha Harlan, but that he cannot ascertain that any guardian has been appointed for the other minor heirs and next of kin.

"Petitioner further shows that it is necessary to sell the whole, or part of said real estate, to pay the debts of your said petitioner, and any other debt or debts that may be due and owing from said estate, when the same can be ascertained. That he has no other mode or means of recovering the same or any part thereof.

"Therefore your petitioner prays for the aid of this Court in the premises, and that proceedings may be had and an order made pursuant to the statute in such case made and provided, for the sale of the whole, or so much of the aforesaid real estate as may be sufficient to pay the debt of your petitioner, and such other debts, if any there be against said estate, and that for such minor heirs or next of kin of said deceased as have no guardian, suitable persons may be appointed guardian or guardians to take care of their interests in the premises : and your petitioner will ever pray.

"BENJ'N ASPINWALL, Administrator."

Which petition was duly verified.

On the tenth of November, 1855, an order of sale was made, of which the following is a copy :

"In the matter of the estate of George Harlan, deceased. And now again comes Benjamin Aspinwall, administrator de bonis non of the above estate, by his attorney, L. Archer, and again presents to the Court his petition heretofore filed herein, praying for an order and decree of this Court to sell a portion of the real property belonging to said estate. Also comes the attorney for the absent and minor heirs, and the objections filed by said attorney to the granting of said petition for a sale of real property having been taken under advisement, and the Court now here having considered the matters therein contained, and being sufficiently informed therein, overrules said objections ; and it being proved to the satisfaction of the Court that due notice of the said petition, and of the time and place of hearing the same, had been given as required by law, the Court now proceeds to hear and determine the matters in said peti-

20

tion contained; and the proofs and allegations being heard, and the Court being fully satisfied from the same that a sale of the following described property, to wit: (Here follows a description of the two parcels described in the petition for the sale, in the same language as that used to describe them in the petition) is necessary to pay the debts outstanding against said estate, it is therefore ordered and decreed by the Court that the said administrator, Benjamin Aspinwall, do, after giving a good and sufficient bond as required by law, in the penalty of eight thousand dollars, proceed according to law to sell to the highest and best bidder, for cash in hand, the above described real property, as follows: The one hundred-vara lot number ten to be sold in lots of twenty-five by fifty varas, and the remainder of the property in such parcels or parcel as to the said administrator may seem best for the interests of said estate. And it is further ordered by the Court that said administrator, before proceeding to sell the said property in accordance with this order, do give due and lawful notice of the time, place and terms of said sale, and also a description of the property to be sold, by publishing the same for at least six weeks next preceding the day set for the sale, in the " San Francisco Daily Herald," a newspaper published daily in the said city of San Francisco, and also by posting notices thereof in three of the most public places in the county of San Francisco; said notices to describe the property to be sold with common certainty."

At the conclusion of the trial, the defendant's counsel asked the Court to give to the jury the following instructions:

1st. At the time of the appointment of Aspinwall, by the Probate Court of Santa Clara county, as the administrator of the estate of Harlan, and at the time of the sale of the one hundred vara lot number ten, by Aspinwall, as the administrator of the estate of Harlan, Henry E. Smith was the legally appointed and qualified administrator of that estate. The Probate Court of Santa Clara county, therefore, had no jurisdiction in respect to the appointment of a second administrator, and could confer upon Aspinwall no power to sell. The appointment of Aspinwall was absolutely void; the sale made by him was a nullity; and the deed made by him, as administrator, conveyed no title.

Haynes *v.* Meeks.

2d. Though Smith may have presented to the Probate Court his resignation as administrator of the estate of Harlan, yet if the same was not accepted by the Probate Court, nor acted upon, but on the contrary the said Smith continued to act as administrator, and the Court continued to deal with him as such, such resignation was ineffectual to divest Smith of his trust, and he continued to be the legal administrator of the estate; and so long as he continued to be such administrator, the Probate Court had no jurisdiction or power to appoint a second administrator. Such appointment was void, and all acts done by the appointee were nullities.

3d. After a sale has been made, under the authority of the Probate Court, of sufficient real property to pay all the debts of the estate, and all expenses of administration and charges against the estate, and the money has come into the hands of the administrator, the creditors of the estate must look alone to the funds in the administrator's hands for the payment of their claims. So far as the heirs of the intestate are concerned, the sale and the receipt of the money by the administrator are a satisfaction of the debts, and the Probate Court is without jurisdiction to order any further sale of property of the estate. Such an order is void, and any sale made under it conveys no title to the purchaser.

· 4th. The petition presented by Aspinwall to the Probate Court, for an order to sell real estate, was defective in not showing the amount of personal estate that came to the hands of the administrator of Harlan's estate, and in not setting forth all the real estate of which the intestate died seized, or which was then unsold, or the condition of any of the real estate; and said petition did not give to the Probate Court any jurisdiction to make the order of sale, and the order made therein was void, and the sale made under its authority a nullity.

5th. The Probate Court had no jurisdiction to make the order of sale actually made on the petition of Aspinwall, and the order was void for the further reason, that no order to show cause why the order of sale should not be made was made by the Court, and served in the manner directed by the statute.

The Court refused to give any of these instructions, to which defendant excepted. The Court then instructed the jury to bring in verdict for the plaintiff, to which defendant excepted.

The jury found for the plaintiff, and judgment for him was entered accordingly, from which the appeal is taken.

*A. P. Crittenden,* for Appellant.

I.    At the time of appointment of Aspinwall as administrator of Harlan, Smith was the legally appointed and qualified administrator of Harlan's estate.    The Probate Court had no jurisdiction to appoint another administrator, the office being filled.    The appointment of Harlan was void, and all acts pretended to be done by him as administrator were nullities.    (Act to Regulate Estates of Deceased Persons, secs. 100, 70, 81, 86, 98, 112, 146, 230, 249, 283, 82, 83, 281, 233, 237 ; *Flinn* v. *Chase,* 4 Denio, 85 ; *Beckett et als.* v. *Selover,* 7 Cal. 215 ; 4 Phil. Ev. 64, n. 42, and cases cited, 69, 77 ; *Bloom et als.* v. *Burdick,* 1 Hill, 130 ; *Corwin et als.* v. *Merritt,* 3 Barb. 341 ; *Dakin* v. *Hudson,* 6 Cow. 223 ; *Atkins* v. *Kinnan,* 20 Wend. 241 ; *Planters' Bank of Mississippi* v. *Johnson,* 7 S. M. 449 ; *Brown* v. *Campbell,* 6 How. 230 ; *Currie* v. *Steward,* 5 Cush. 55 ; *Wiley, Adm'r,* v. *White,* 2 Stewart, 331 ; *Ventress* v. *Smith,* 10 Pet. 161 ; *Bright* v. *Boyd,* 1 Sumner, 478 ; *Kohler* v. *Knapp,* 1 Brad. Surr. R. 243 ; *Holyoke* v. *Haskins,* 5 Pick. 20 ; *Cutts* v. *Haskins,* 9 Mass. 543 ; *Howard* v. *Gore,* 5 Pick. 369 ; *Griffiths* v. *Frazier,* 3 Cranch. 11.)

II.    Even if the appointment had been valid, the Court had no jurisdiction to order a second sale of the property of the estate to pay the claim of Aspinwall ; sufficient money to pay the same having been realized by a former sale made for the purpose.    The first sale satisfied the debt, so far as the estate and those interested in it were concerned.    (Act above cited, wherever relating to sales and payment of debts ; *Gregory* v. *McPherson,* 13 Cal. 562.)

III.    The petition of Aspinwall for an order to sell was defective, in not showing the amount of personal property that had come to the hands of Harlan's administrator, and in not setting forth all the real estate of which Harlan died seized, or which was then unsold, or the condition of any of it, and it did not give the Court any jurisdiction to order a sale, and the order was void. (Authorities cited above.)

IV.    The Court erred in refusing to give the instructions prayed by the appellant.

V.   The Court erred in instructing the jury in peremptory terms to find a verdict for the respondent.

*Tod Robinson*, also for Appellant.

The Probate Court was deprived of all power further to dispose of the estate, after a sufficient quantity had been sold to pay the debts and expenses of administration.   In other words, that Court has not the function to revive its power on this subject after it has once been exercised and its ends obtained.

This proposition is derived from a consideration of the constitution of the Court as one of limited jurisdiction in this particular : from the implications of the statute, and from the analogies of the law.

I.   From the consideration of the Court as one of limited special jurisdiction, where its powers are evoked to dispose of the property of an estate.

Whatever doubts may exist with regard to the powers of the Probate Court, or what credit is to be given to its judgments or acts on other subjects, yet as to those which that Court derives under particular statutes, and which would not in the absence of the statute pertain to it as a Court of Probate, it is universally conceded it must, in common with all other Courts, be deemed a Court of limited jurisdiction.   (29 Ala. 525 ; 1 Hill, 139 ; 3 Barb. 343.)   And these cases, and all others on the subject, hold that the power to dispose of the property of estates is derived wholly from the statutes.   Now, the statute authorizes the Probate Court to order the sale of the property of an estate, but defines the circumstances and conditions under which it may alone be done, and the manner and mode of doing it.   The circumstances and conditions are, when there are not sufficient assets in the hands of the administrator to pay the debts and expenses of the estate : in that case, so much as is necessary for these ends may be sold, and no more, with the exception of the provision contained in section one hundred and sixty-one of the act.

In this case such an order had been made, and so much of the property of the estate as was necessary to pay the debts of the estate and the expenses of administration had been sold, and the money paid into the hands of the administrator.   The Probate

Court can do no more. It possesses only a limited power, and has exhausted the power given by statute. Nowhere in the statutes can there be found any authorization to the Probate Judge to order the sale of property by an administrator to supply the losses by embezzlement or misconduct of the administrator himself. Counsel will have to go out of the statute for such authority, and that very necessity establishes the fact that it does not exist.

II. This view is sustained by all the just implications of the statute.

By the provisions of that statute, in order to obtain the sale of real property, it is necessary that it shall appear that there is not sufficient personal property to pay the debts, etc., of the estate, what that personal property is, the amount of debts outstanding, etc. These requisites indicate that it is only after a general and particular acquaintance is obtained by the Probate Judge of the condition and circumstances of the estate, and the absolute necessity of the sale of the realty is made apparent, that the Court can be authorized to sell at all. When this knowledge is obtained, by a full review of the whole matter, the Court then orders a sale of the lands of the estate, or so much thereof as may be necessary to pay the claims against the estate, etc. When that order is made, by no express provision of the statute does it appear that the Probate Court can revise, renew or remodel it, or make further order concerning the subject. The powers of the Court, as touching this matter, have become exhausted by their exercise.

III. This view is also supported by the analogies of the law.

The objections urged against the views of the appellant are based mainly, if not entirely, upon what is claimed to be the conclusiveness of the judgments, orders or decrees of Courts of Justice. The argument is, that inasmuch as the Probate Court has the power to sell the property of an estate under some circumstances, and in the exercise of that power has ordered a sale, the purchaser under such sale is protected in his purchase by the conclusiveness of the order, and the full faith and credit which is given to the acts of judicial tribunals. This is generally true with regard to Courts of general jurisdiction, and is received with still greater moderation relative to the exercise of powers by Courts of limited jurisdiction.

But with regard to a purchase made under the judgments of Courts of general jurisdiction, though as a general rule the purchaser is not required to look to anything besides the judgment and execution, yet these, when entirely regular, are not always sufficient to protect the purchaser. The purchaser is bound to see that the defendant has been summoned, or in some other mode has been allowed his day in Court.

It is likewise the case, that a purchaser under a judgment which has been paid obtains no title to the property. (2 Hill, 567 ; 8 Wend. 681.) And the reason is, that a purchaser under a power purchases at his peril. The judgment and execution constitute the power of attorney which authorizes the officer to sell. If the judgment is paid, the power is gone. If there is no subsisting authority to sell, no title is acquired. In such case, the purchaser must take the risk that some act, either of record or *in pais*, has not occurred to extinguish the authority through which he derives title.

If such is the rule of law with regard to acts done in pursuance of judgments of Courts of general jurisdiction, are they not applicable with equal or greater force to acts done in pursuance of orders made by a Court of professedly limited powers, in ordering the sale of property of others ? If payment to a Sheriff, who is proceeding to sell the property of a judgment debtor under a judgment and execution, is a satisfaction of the judgment, and a sale under such judgment will give no title to the purchaser, why should it appear strange that payment to an administrator of moneys by sale of portions of the estate, sufficient to pay all demands against the estate, is a satisfaction of those claims as regards the heirs of the estate ?

When this illustration was mentioned on the argument, it was urged that there was no analogy between the case at bar and the one propounded, because, it is said, a Sheriff is the agent of the plaintiff, and an administrator is the representative of the estate.

To call a Sheriff an agent of a party in Court, is an entire misnomer. In no case do his relations to parties or his actions bear any resemblance to the character of an agent, or acts of agency. He is an officer of the Court and of the law, and in no just sense can he be called an agent, nor can his acts be construed by rules of agency, any more than can the acts of a Judge or a Governor.

So likewise an administrator is an officer of the Court and of the law. (1 William's Executors, 330, 389; 32 Ala. 682.)

But however this may be, or in what relation a Sheriff stands to a judgment creditor, it is not claimed that he is the agent of the purchaser. The relation in which the Sheriff or administrator stands to the creditors cannot affect the rights of the purchaser, and it is his interests we are now considering; and the purchaser in the supposed case takes no title, because there is no authority (which was the judgment) for the sale, the judgment having been paid. It is not disputed that an administrator is the representative of the estate, though the expression is destitute of all logical precision in the connection with the case at bar in which it is used. The administrator may be the representative of the estate, but he is not a representative of the heirs. And this is a controversy between heirs and those who claim under them, and a purchaser under a creditor. An administrator never represents the heirs in any way in disposing of the estate. When he applies to sell property, he is representing the creditors, and them solely; for if the administrator fails to apply, the creditors may under the statute. On such occasions he acts " contradictorily" to the heir. The heirs must be cited, and an opportunity allowed them to contest the application. The administrator is plaintiff, the heirs defendants. It is his business to urge, theirs to oppose. It is their property which is proposed to be sold, and not the administrator's—they are adversaries. He in so doing is acting on behalf, and therefore as the representative of creditors. When the sale takes place, the money goes into the hands of the creditors' representative and the heirs' adversary. The act by which their property is taken from the heirs is wholly compulsory on the part of the heirs, and is solicited and invited on the part of the creditors and their representative. The administrator in all these proceedings is the agent of the interests of the creditors, and is the opponent of the interests of the heirs. When the proceeds of the sale of their estate is placed in the hands of the administrator, who in this proceeding is acting for and on behalf of creditors, and therefore as their representative, is it not sufficient to absolve the heirs and their property from all further liability to creditors ?

Haynes *v.* Meeks.

If the administrator squanders or misapplies the money, should not the loss fall upon those at whose instance, or by whose act, or for whose benefit, the property was sold, and money came into the hands of the delinquent ?   Neither the administrator nor the Court has the power to sell the land of an estate, except at the instance of the creditors or for their benefit.   When it is thus sold for their benefit and *in invitum* on the part of the heirs, should not the loss fall upon those upon whom the benefit would have been conferred ?

In case a judgment is paid to a Sheriff under an execution, the judgment is satisfied.   The judgment creditor can get out no new proceedings against the debtor, and must look to the Sheriff for payment.   The defendant is wholly absolved.   Nor can a purchaser obtain a good title from a sale under a judgment so satisfied.   In a proceeding to sell the property of an estate, the creditors are the actors.   Through the instrumentality of the officer of the law and of the Court—the administrator—the property of the heir is sold and the proceeds go into the hands of an officer of the Court and the law.   Precisely as in the case of an execution it goes into the hands of the Sheriff, who is likewise an officer of the Court and the law.   Is there then any just reason why the property of the heir should not be absolved from all further responsibility ?

When a claim against an estate is allowed by an administrator and approved by the Judge, it is as a judgment against the estate, which judgment is to be enforced against the property of the estate by the instrumentality of the administrator or the creditors, with the concurrence of the Court. (*Deck's Estate* v. *Gerke*, 5 Cal. 666.)   Such a judgment was obtained in this case.   Such proceedings were had as amounted to an execution, to wit: an authority for the administrator to sell the property.   He did sell sufficient to pay the judgments, and the amount came into his hands.   If he had done the same thing as Sheriff, the remaining property of the debtor would have been discharged from all liability for the debt. Acting as administrator, the reason appears to be stronger why the estate should be absolved from all further responsibility than in cases where the Sheriff misapplies the money collected on execution ; for the reason, that in cases of an execution the plaintiffs and defendants are parties of mature age, qualified to watch over and guard

diligently their own interests; but in proceedings before a Probate Court, in a large majority of instances, the parties whose rights are affected are minors—infants without capacity in presumption of law, and in fact, to give that attention and to take those steps which may be necessary to guard themselves against the negligence or dishonest conduct of those whom the law has forced upon them as the guardians and administrators of their interests. By the provisions of the statute, if any just suspicion is excited by the acts of the administrator, as touching the fidelity of his administration, or his solvency becomes questionable, or that of his sureties, provision is made by which creditors can remove him from his office of trust or obtain full and satisfactory security. But no such privilege is given to the heir; and if it were, in the vast number of cases in which the heirs are of tender years, how totally ineffectual would the right be to them. Yet in this case it is contended that the law gives a greater protection to those who are capable of attending to their own affairs and neglect to do it, than to those who are unable to attend to their own interests and are peculiarly *the wards of the law.*

In examining this point, but one case has been found in point— that in 2 Carter's Ind. R. 446. But as the decision in that case seems to have been rendered without argument, and as no reason was given by the Court for its determination, it possesses none of the qualities of authority or of persuasiveness. Not *how* it has been, but *why* it has been so decided, is the essential element of all authoritative or respected precedents. Some further reason than the precedent of the Indiana case must be furnished, to satisfy an intelligent Court and bar of the justice of a decision which shall conform to it.

*D. O. Shattuck* and *Selden S. Wright,* for Respondent.

I. Whether the Probate Court acted legally or illegally in appointing an administrator, is not material in this case; it is a judicial act, and can only be considered on appeal, and cannot be inquired into collaterally. (*Haynes* v. *Meeks,* 10 Cal. 110; *Sadler* v. *Sadler,* 16 Ark. 628; *Riley* v. *McCord,* 24 Miss. [3 Jones] 265; *Pelegrud* v. *Ferguson,* 6 Rich. Eq. S. C. R. 378; *Alexander* v. *Stuart,* 8 Gill & Johnson, 226; *McLarin* v. *Thompson,*

Haynes *v.* Meeks.

Dudley, S. C. R. 335; *White* v. *Brown*, 7 Monroe, 446; *Ex parte Barker*, 2 Leigh, 719; *Riser* v. *Snoddy*, 7 Ind. 442; *Bryan* v. *Walton*, 14 Geo. 185; *Stern* v. *Stern*, 25 Miss. 513; *Clarke* v. *Puhon*, 31 Maine, 503; *Ragland* v. *Green*, 14 Smeed & Mar. 195; *Daney* v. *Streeklinge*, 15 Texas, 557; *Alexander* v. *Maverick*, 18 Id. 194–6; *Erwin* v. *Scriber*, 18 Cal. 499.)

II. A decree of confirmation of a sale of land by a Probate Court cannot be inquired into collaterally except for fraud. (*Runyan* v. *Newark India Rub. Co.*, 4 Zabr. 467; *Emery* v. *Hildreth*, 2 Gray, [Mass.] 228; *Voorhies* v. *Bank of U. S.*, 10 Pet. 477; *Seymour* v. *Seymour*, 22 Conn. 272; *Poor* v. *Boyce*, 12 Texas, 440; *Bland* v. *Muncostic*, 24 Miss. [2 Cush.] 62; *Merrill* v. *Harris*, 6 Foster, [N. H.] 142; *Simmons* v. *Estelle*, 19 Penn. [7 Harris] 439; *Irwin* v. *Jeffries*, 3 Ohio, U. S. 389; *McDoud* v. *Burch*, 7 Geo. 559; *Schinker* v. *McFarland*, 4 Barb. 139; *Jennings* v. *Jennings*, 9 Ala. 285; *Snyder* v. *Markel*, 8 Watts, 416; *Jackson* v. *Robinson*, 4 Wend. 436; *Jackson* v. *Irwin*, 10 Id. 441; *Atkins* v. *Kinnan*, 20 Id. 241; *Tolrin* v. *Thompson*, 2 Peters, 163–168; *Stern* v. *Stern*, cited on first proposition; *Leverett* v. *Harris*, 7 Mass. 296; 1 Phil. Ev. 242; 1 Greenl. Ev., sec. 550; *Ex parte Tobias Watkins*, 3 Pet. 207; *Hyde* v. *Turner*, 1 Barb. 75.)

III. The sale of real estate by an administrator is a proceeding *in rem*, operating on the estate and not on the heir. (*Grignon's Heirs* v. *Actor*, 2 How. U. S. 341; *Shelden* v. *Newton*, 3 Ohio, U. S. 494; *Lynch* v. *Baxter*, 4 Texas, 431; *Rogers* v. *Wilson*, 8 Eng. [13 Ark. R.] 507; *Howard* v. *Moore*, 2 Mich. [Gibbs] 226.)

IV. A *bona fide* debt against the estate is a lien on the land of the deceased, and although personal property may have come to the hands of the administrator sufficient to pay the debts, and he has misappropriated it, it does not release the creditor's lien, and is no cause for preventing an order of sale to pay such debts if other remedies have been exhausted. (*Nettleton* v. *Dixon*, 2 Cart. [Ind.] 446; *Hodgden* v. *White*, 11 N. H. 208–217; *Leverett* v. *Harris*, 7 Mass. 295; *Perkins* v. *Fairchild*, 11 Id. 227; *Soye* v. *McAllister*, 18 Texas, 95.)

In deciding on the sufficiency of assets, the Probate Court acts judicially, and its judgments cannot be attacked collaterally. (*Jackson* v. *Robinson*, 4 Wend. 441.)

The act of an administrator in receiving assets and misappropriating them is not analogous to that of a Sheriff in levying on personal property. The Sheriff is elected, and is the chosen legal agent of one of the parties. The administrator claims by right, and the creditor cannot dispute the appointment.

Again: the Court sits upon and adjudicates the question of assets. Were a Court to decide that a former levy was not a satisfaction of the debt, and award an execution under which land should be sold, the sale would unquestionably be good.

FIELD, C. J. delivered the opinion of the Court—COPE, J. and NORTON, J. concurring.

This is an action to recover the possession of certain real estate situated in the city of San Francisco. Both parties deraign title from the same source—from one George Harlan, who died in the county of Santa Clara in July, 1850. It is admitted that Harlan was possessed of a good title to the premises at the time of his death. The plaintiff claims by a conveyance from Aspinwall, who is alleged to have been at the time administrator of Harlan's estate, executed upon a sale ordered by the Probate Court in November, 1855; the defendant claims by a previous conveyance from Harlan's heirs, executed in April, 1854.

Soon after the death of Harlan, one Henry C. Smith was appointed administrator of the estate, and immediately qualified and entered upon the discharge of his duties. Whilst he was acting as administrator, real property belonging to the estate was sold by order of the Probate Court, upon his petition, to pay the debts of the estate and the expenses of the administration. Funds were thus received by him sufficient, with other funds previously in his hands, to pay all the debts and expenses, and leave a balance of nearly $2,000. Among the debts was one to Aspinwall, and upon it the latter instituted suit, and in July, 1853, recovered judgment for upwards of $8,000. Upon this judgment only the sum of $3,500 was ever received from the administrator. On the thirty-

first of December following, Smith filed a paper, in which he declared that he resigned his appointment as administrator, and requested that the resignation be received. The Court thereupon ordered him to turn over the papers and effects of the estate in his hands to the Public Administrator of Santa Clara county, and to make with him a full settlement before the first day of the following term; declaring that when he had made such settlement, he and his sureties should be released from further liability; and directing that the estate be placed in the hands of the Public Administrator for the purposes of general administration. At the next term—in January, 1854—Smith presented an exhibit purporting to be a final report of the condition of the estate, and of his proceedings therein, and showing a balance of funds in his hands more than sufficient to pay all outstanding claims. The Court approved of his accounts in part, and ordered him to pay immediately all the debts of the estate, and to make a final settlement at the next term; and revoked the order of December 31st, by which he was directed to turn over the estate to the Public Administrator, and the latter was authorized to take charge of it for general administration.

In May, 1855, not having obtained payment of the balance of his judgment, Aspinwall applied to be appointed administrator of what was alleged in his petition to be the unadministered part of the estate, and in June following the appointment was made, and he gave the usual bond and qualified. In November, 1855, he obtained from the Court an order directing him to sell two parcels of land situated in the city of San Francisco. At the sale which followed, the plaintiff became the purchaser of the premises described in the complaint. The sale was duly reported and confirmed, and a conveyance by Aspinwall, as administrator, executed. It is under this conveyance that the plaintiff claims.

The questions presented for consideration relate to the validity of the appointment of Aspinwall as administrator, and to the jurisdiction of the Court to order the sale which was made by him. To the appointment of Aspinwall it is objected that Smith, the original administrator, was still in office—his resignation not having been accepted, nor his letters revoked. To the jurisdiction of the Court, it is objected that there were sufficient funds in the hands of Smith,

the original administrator, to pay all the debts and charges against the estate; and that the petition of Aspinwall for the sale was fatally defective in its averments.

Upon the first question presented, we are concluded by the previous decision of this Court when the case was here at the July term, 1858, (10 Cal. 110). It was then held upon substantially the same evidence, that the resignation of the first administrator, Smith, was accepted by the Probate Court; that the acceptance of the resignation, before Smith had settled his accounts, was only an irregularity—or, as the Court termed it, an error "merely voidable"—one, in other words, which might have been corrected by appeal, or direct proceedings for its correction, but which could not be set up collaterally in impeachment of the action of the Probate Court. We confess that we are by no means satisfied with the conclusions at which the Court arrived in this respect. We do not perceive in the act of Smith, the former administrator, anything more than an offer to resign. A resignation is not a matter absolutely in the power of an administrator, to be made at any time he may choose. The statute only confers upon him a conditional right to resign. Its language is that he may resign, "*provided* he shall first settle his accounts and deliver up all the estate to such person as may be appointed by the Court." Smith never complied with this condition, and it nowhere appears that the Court ever dispensed with it. The Court did, it is true, on the thirty-first of December, 1853, order him to turn over the estate to the Public Administrator of Santa Clara county; but in the following month it vacated the order, and directed him to apply the moneys in his hands to the payment of the outstanding claims. And the subsequent proceedings show a recognition by the Court of his continued existence as administrator of the estate. Admitting, as contended, that the Court, having the power to remove an administrator for failure to account, could accept of his resignation without such account being rendered, it does not appear that any such course was ever pursued. The appointment, therefore, of Aspinwall—a new administrator—the former administrator not having been removed, nor his resignation accepted, was a proceeding which the Court had no jurisdiction to take. The appointment of a new administrator can no more be

made whilst a former administrator is in office, than an appointment can be made in the first instance until the death of an intestate. The allegation of the death of a person in a petition for letters would not confer any jurisdiction, if such person were still living. The assumption of the fact of the party's death, however regular the proceedings in other respects, would not support the issuance of letters against the proof of such party being still alive.  So, too, the allegation by Aspinwall in the petition for his appointment, that the " administration of Smith had fully ceased and determined," is without force against the record evidence to the contrary.  Nor can it be said that there was a removal of Smith by force of the subsequent appointment of Aspinwall.  There is no such thing as a removal of an existing administrator simply by force of the appointment of another person.  The office must first become vacant before a scond appointment can be made.  A vacancy may arise by operation of law upon the happening of certain events, as by lunacy of the administrator established by judicial decree, or by his conviction of an infamous crime.  (Secs. 95, 96 and 101.)  In such case, the event, when established or brought to the notice of the Probate Court, is equivalent to an order of the Court revoking the letters. But where the law does not declare the vacancy as a consequence flowing from a particular event, a revocation of the letters of the first administrator, he being still living, is as essential to the appointment of another person to succeed him, as was the death of the intestate to the original appointment; and the only competent proof of a revocation of letters in such case is an order of the Court directing it.  But upon the question of the acceptance of the resignation of Smith, and the validity, so far as any collateral attack is concerned, of the appointment of Aspinwall, we are concluded, as we have stated, by the previous decision of this Court. That decision constitutes the law of the case, and controls upon the present appeal.  (*Davidson* v. *Dallas*, 15 Cal. 75 ; *Phelan* v. *San Francisco*, 20 Id. 39.)  We have expressed our views upon the question in order to obviate the idea of an implied approval of the decision, and to leave us unembarrassed by it if similar questions are presented in other cases for consideration.  It may be observed here, that the decision which appears in the report in 10 Cal. 120,

remanding the cause, with directions to the Court below to enter judgment for the plaintiff, was subsequently modified on petition for rehearing by directions for a new trial.

The present appeal must, therefore, be determined upon the questions presented as to the jurisdiction of the Court to order the sale made by Aspinwall.

The authority of the Probate Court to order a sale of real property of an intestate is derived entirely from the statute. It is a limited, and not a general authority. It may be exercised in certain specially designated cases; it can be exercised in no other. (*People* v. *Corlies*, 1 Sandf. 247; *Corwin* v. *Merritt*, 3 Barb. 343; *Bloom* v. *Burdick*, 1 Hill, 139; *Currie* v. *Stewart*, 27 Miss. 55; *Laughman* v. *Thompson*, 6 Smedes & Mar. 259; *Wiley* v. *White*, 3 Stew. 355; *Townsend* v. *Gordon*, 19 Cal. 189.) When, therefore, an order of sale is relied upon, the question is, was the order made in a case provided by the statute? To determine this, we must, in the first instance, look to the petition for the sale, which is the foundation of the order; assuming, of course, that the Court acquired jurisdiction originally to grant administration upon the estate. The proceeding for the sale, though made in the general course of administration, is a distinct and independent proceeding, in the nature of an action, of which the petition is the commencement, and the order of sale is the judgment. (*Estate of Spriggs*, 20 Cal. 121.) We must, then, examine the petition, to ascertain whether a case is presented by its averments, within the statute, upon which the Court can act. And the petition must show on its face two things: first, the insufficiency of the personal property to pay the debts and charges against the estate; and second, the necessity of the sale of the real property, or some portion thereof, for that purpose. Both must appear before the Court can take jurisdiction of the proceeding. The truth of the averments—their sufficiency appearing—is a matter which must be determined at the hearing of the petition, and the judgment of the Court thereon, if rendered upon legal notice, cannot be questioned collaterally. It may be reviewed, and if erroneous, corrected by appeal, but not otherwise.

The statute prescribes with particularity what facts must be stated in the petition. After declaring that the personal estate

Haynes v. Meeks.

shall be first liable for the debts and expenses, and if this is insufficient to pay the same, and the allowance to the family, that the real estate may be sold for that purpose (sec. 115) ; and that the executor or administrator may in such case make the sale upon the order of the Probate Judge, (sec. 154) it provides as follows : "To obtain such order, he shall present a petition to the Probate Court, setting forth the amount of personal estate that has come to his hands, and how much thereof, if any, remains undisposed of; the debts outstanding against the deceased, as far as the same can be ascertained ; a description of all the real estate of which the testator or intestate died seized, and the condition and value of the respective portions and lots ; the names and ages of the devisees, if any, and of the heirs of the deceased, which petition shall be verified by the oath of the party presenting the same." (Sec. 155.) "If it shall appear by such petition," continues the statute, "that there is not sufficient personal estate in the hands of the executor or administrator to pay the allowance to the family, the debts outstanding against the deceased, and the expenses of administration, and that it is necessary to sell the whole or some portion of the real estate for the payment of such debts," the Probate Judge shall make an order directing all persons interested to appear before him at a specified time and place, "to show cause why an order should not be granted to the executor or administrator to sell so much of the real estate of the deceased as shall be necessary to pay such debts." (Sec. 156.) As will be seen from the provisions to which we have thus referred, a sale of the real property cannot be made so long as there is a sufficiency of personal property in the hands of the administrator to pay the outstanding debts and charges against the estate. There must be an insufficiency of such property for that purpose, before the Court has jurisdiction to act upon the petition. And this insufficiency must appear, not by mere averment, but by the statement as to the personal property and the outstanding debts and charges which the statute provides. But this is not all : it must also appear by the petition " that it is necessary to sell the whole, or some portion of the real estate," for the payment of the debts and charges. (Sec. 155.)   Such necessity does not follow as a matter of course
21

from the insufficiency of the personal property. The real estate may be yielding an income sufficient to pay the outstanding debts and charges, for the payment of which the sale is asked, before such sale could be made and confirmed, or if resisted, could be the subject of review on appeal. In such case, there would be no necessity for any sale. And the income, though not sufficient for the payment of the entire amount of these debts and charges, may be sufficient to pay the greater portion of them. In this case, the necessity for the sale would be limited to such portions—supposing there were more than one parcel—as would make up the deficiency. The necessity must appear, before the Court can take any jurisdiction and act upon the petition. And this necessity must appear, not by mere averment, but by an exhibition of the real property of the deceased. The necessity is a conclusion which the Court must draw for itself from the facts stated. It is not a matter for the executor or administrator to determine; it is a matter for the Court, and the petition must, therefore, furnish the materials for its judgment. These consist in the description which the statute provides the petition shall set forth, " of all the real estate of which the testator or intestate died seized, and the condition and value of the respective portions and lots." (Sec. 155.) A compliance with the statute in this particular is, then, essential to the jurisdiction of the Court, as without it the Court cannot judge of the necessity of the sale asked; and in this view, we do not perceive how it can be dispensed with from the petition, any more than the statement as to the personal property and the outstanding debts. (*Bloom* v. *Burdick*, 1 Hill, 130; *Corwin* v. *Merritt*, 3 Barb. 343; *Townsend* v. *Gordon*, 19 Cal. 188; *Gregory* v. *Taber*, Id. 397.)

Proceeding now to the examination of the petition of Aspinwall in the light of the views we have expressed, we find it fatally defective in several essential particulars. It sets forth that no personal estate has come to his hands, and that there is none to his knowledge, Smith, the former administrator, having disposed of the whole of it; and that two parcels of land situated in the city of San Francisco belong to the estate, giving the description and value of such parcels. It does not state the amount of the personal property which had come to the hands of the former administrator, or what disposition had been had of it, or that any effort had been

made to ascertain the disposition of it, or of its proceeds, or to compel the former administrator to account. It simply avers that the petitioner (Aspinwall) had made every effort in his power to collect from the former administrator and his sureties the amount due to him upon a judgment recovered against the estate, but without success. Nor does it state the extent, condition or value of the real estate of which the intestate died seized, nor the condition of the parcels described.

If we look outside of the petition to other records of the Court respecting the estate, we find, as we have stated, that for the payment of the debts and the expenses of administration real property had already been sold, and proceeds received more than sufficient for that purpose. Even the application of Aspinwall for letters avers that on the twenty-fifth of January, 1854, Smith was adjudged by the Court to have sufficient funds in his hands to pay all the debts against the estate, and was ordered to pay them. We refer to the possession of funds by the former administrator, not that it can have any effect in determining the sufficiency of the averments in the petition of Aspinwall. If those averments are in themselves sufficient, the jurisdiction of the Court attached without regard to the funds previously received. A petition may set forth inaccurately the amount of the personal property which has come to the hands of an administrator; it may even omit valuable portions thereof; yet if it purport on its face to set forth the whole of such property, and how much of it, if any, remains undisposed of, the order for the sale which may follow cannot be attacked by reason of the inaccuracies or omissions. The truth of the averments respecting the personal property, so far as they affect the validity of the order, is to be determined at the hearing of the petition. We refer to the possession of funds by the former administrator, to show the necessity of a strict compliance with the statute in the statements of the petition. The statute requires that the petition shall set forth the amount of the personal property which " has come to the hands of the executor or administrator ;" that is, the amount which has been received since the administration of the estate commenced. It also requires that the petition shall set forth the amount of such property, if any, remaining undisposed of. A

statement of these particulars will direct the attention of the Court, on the hearing, to the property which has been disposed of, and lead to inquiries as to the manner of its disposition, and the use made of any proceeds received. A question might then arise whether, if funds had been received by the executor or administrator sufficient to pay the outstanding debts and expenses, a sale of the real estate for such payment could be ordered, even if the funds received had been squandered or illegally disposed of; whether, in other words, if funds properly applicable to the payment of outstanding debts and expenses, and ample for that purpose, have been lost by a fraudulent or an illegal use of them by the executor or administrator, the loss is to fall upon the creditor or the heir. This latter question has been discussed in the present case; but we do not think it properly arises. There is no evidence that the funds received by the former administrator have been squandered, or ever used at all, or that upon proper proceedings before the Probate Court—and none appear to have been taken—their transfer to the new administrator might not be obtained. The inability of Aspinwall to collect the balance due upon his judgment from the former administrator personally, or the sureties on his official bond, establishes nothing as to the loss of any funds belonging to the estate.

The administrator, Aspinwall, was not relieved from a compliance, to the extent of his ability, with the statute, as to the statement of the personal property in his petition, from the fact that there had been a previous administrator of the estate. He is designated, it is true, in the order of appointment, "as administrator *de bonis non.*" But there is no such officer known to our law. By our law there are only two classes of administrators; special and general. Special administrators are those appointed to take temporary charge of the estate until general letters are issued, or during the suspension of a general administrator, and in like cases. General administrators are those appointed to administer generally upon the entire estate. Where the authority of a general administrator has terminated by death, the revocation of his letters, or otherwise, and a new administrator is appointed, the latter takes the place of the former. He succeeds to the office, clothed with the same powers

and subject to the same restrictions; and when he invokes the action of the Court, he must institute the same proceedings, and make, to the extent of his ability, a similar showing. He must set forth, not merely the personal property which has come into his own possession since his appointment, but, so far as he is able, that which has come into the hands of the administrator of the estate—for such is the plain meaning of the statute—whether that administrator was himself or his predecessor. He may not be able to set forth the entire amount, but he must endeavor to do so. The records of the Court, especially the inventory filed, will aid him in this respect, if the previous administrator, he being still alive, or his papers, if dead, do not furnish the requisite information. He can at least state to the Court the imperfection of his knowledge, and thus direct the attention of the Court to the necessity of particular inquiries on the subject at the hearing.

In the petition of Aspinwall there is no attempt to comply with the statute in respect to the personal property. The averment that no personal estate has ever come to his hands, and that there is none, the former administrator having disposed of the whole of it, leaves the Court in entire ignorance as to the condition of the estate with respect to such property, information in respect to which is essential to the jurisdiction of the Court. And in respect to the real property, the petition is still more glaringly defective. It simply states that two parcels of land, giving their description and value, situated in the city of San Francisco, belong to the estate. It says nothing of the condition of those parcels—whether they were improved or waste lands; whether they were yielding income or burdening the estate with expenses—from which the Court could determine as to the necessity of their sale. Nor does it purport to give a description of all the real estate of which the intestate died seized. So far as appears, several other parcels may also have belonged to the estate, which it would have been more advantageous to the heirs to have sold than the parcels described.

It follows that the petition is fatally defective, and its averments gave no jurisdiction to the Court. The subsequent action of the Court, therefore, in ordering a sale, and the proceedings based thereon, partake of the original defect, and are void.

Judgment reversed, and cause remanded for new trial.