## Corwin and others *vs.* Merritt.

The surrogate's court is a creature of the statute. And being a court of inferior and limited jurisdiction, those claiming under its decree must show affirmatively that the surrogate had authority to make such decree, and that the facts upon which he acted gave him jurisdiction.

Every statute authority in derogation of the common law, to divest the title of one person and transfer it to another, must be strictly pursued, or the title will not pass.

When lands are to be taken under a statute authority in derogation of the common law, every requisite of the statute having the semblance of benefit to the owner, must be strictly complied with.

Upon an application, by executors or administrators, to a surrogate, for an order directing the real estate of a decedent to be sold for the payment of debts, they are required to deliver to the surrogate a just and true account of the personal estate, and debts of the decedent. This is absolutely necessary, to confer upon the surrogate jurisdiction to make an order for publication.

It is also necessary, upon an application of that nature, that the order made by the surrogate requiring all persons interested in the real estate to appear and show cause against the order for the sale thereof should be duly published. This is necessary to give the surrogate jurisdiction to make the order of sale. And if such publication is not made, the entire proceedings before the surrogate are *coram non judice.*

Such notice to appear is in the nature of first process, to summon the parties; and is indispensable to enable the surrogate to get jurisdiction of the persons of the parties interested in the proceedings.

The usual presumption, that a public officer has done his duty, cannot prevail where it is resorted to for the purpose of making out a vital jurisdictional fact.

If, upon an application, by executors, to a surrogate for an order to sell the real estate of their testator to pay debts, no guardians are appointed for the infant heirs of the testator, the surrogate will not obtain jurisdiction as to them, and his proceedings will be void, so far as they are concerned.

A surrogate has no power to order the sale of the real estate of a decedent, to pay debts, until the executors have applied all the personal estate to that object.

Where the personal property of a testator has been exhausted by the executors in the payment of specific legacies, whether the executors can apply to the surrogate for an order to sell the real estate of the testator for the payment of his debts? *Quære.*

This was an action of ejectment, tried at the Tompkins circuit, in February, 1845, before the Hon. Robert Monell, one of the circuit judges. The suit was brought to recover four equal undivided fifth parts of twenty-one acres of land,

Corwin *v.* Merritt.

being part of lot 61 in the town of Lansing, in the county of Tompkins, whereof Barnabas Corwin, the grandfather of the plaintiffs, died seised, in July, 1826. The plaintiffs, when they rested their case, showed a valid title to the premises in question, by devise from the said Barnabas Corwin. The defence set up was a deed of the premises under a sale by virtue of a surrogate's order, made on the 17th day of April, 1827, by Miles Finch, then surrogate of the county of Tompkins, which deed bore date June 12th, 1827, and was executed by the executors of the last will and testament of the said Barnabas Corwin, to one Abraham Corwin, under whom the defendant held by a contract of purchase. The plaintiffs in this suit were all infants at the time of the proceedings before the surrogate. A verdict was taken for the plaintiffs at the circuit, subject to the opinion of this court, on a case to be made by the plaintiffs. Various objections were taken to the proceedings before the surrogate, and it was claimed by the plaintiffs that the said proceedings were void, for reasons which will sufficiently appear in the opinion of the court.

*Love & Freer,* for the plaintiff.

*Johnson & Schuyler,* for the defendants.

*By the Court,* MASON, J. It is true, in the action of ejectment the plaintiff must recover on the strength of his own title, and not upon the weakness of his adversary's title. In the present case, however, all these parties claim title from the same common source, Barnabas Corwin, deceased, and there is no question as to the plaintiffs' title and right to recover, unless their title was divested by the proceedings before the surrogate, on the application of the executors to sell this real estate to pay the debts of the said Barnabas Corwin. If those proceedings are valid, and can be maintained, upon the proof in the case, then the plaintiffs are not entitled to recover, and the judgment should be for the defendants. The plaintiffs made a perfect title to the premises, and when they rested their

Corwin *v.* Merritt.

case, were entitled to recover. As the defendants claimed that the plaintiffs' title was divested by the proceedings had before the surrogate's court, he was required to show affirmatively that the surrogate had jurisdiction as well of the subject matter as of the persons to be affected by the sale under the proceedings. The surrogate's court is a creature of the statute; and being a court of inferior and limited jurisdiction, those claiming under its decree must show affirmatively that the surrogate had authority to make the decree, and that the facts upon which he acted gave him jurisdiction. (*Dakin* v. *Hudson*, 6 *Cowen*, 221. *Bloom and others* v. *Burdick*, 1 *Hill*, 130. *Thatcher* v. *Rowell*, 6 *Wheat*. 119. *Cornell and others* v. *Barnes*, 7 *Hill*, 35, *and note e*. *The People* v. *Koeber*, *Id*. 40. *Sharp and others* v. *Spier*, 4 *Id*. 76.) It is a familiar principle that every statute authority, in derogation of the common law, to divest the title of one person and transfer it to another, must be strictly pursued, or the title will not pass. (*Sharp* v. *Spier*, 4 *Hill*, 76. *Atkins* v. *Kinnan*, 20 *Wend*. 241. *Sherwood* v. *Reade*, 7 *Hill*, 434. *Bloom* v. *Burdick*, 1 *Id*. 130.) And it has been well said, that "when lands are to be taken under a statute authority in derogation of the common law, every requisite of the statute having the semblance of benefit to the owner, must be strictly complied with." (*Sharp* v. *Johnson*, 4 *Hill*, 99.) The following cases are referred to as sustaining this general doctrine. (*Williams* v. *Peyton*, 4 *Wheat*. 77. *Hubly* v. *Keyser*, 2 *Pen. & Watts*, 501. *Jackson* v. *Esty*, 7 *Wend*. 148. *Sharp* v. *Spier*, 4 *Hill*, 76. *Jackson* v. *Shepard*, 7 *Cowen*, 88. *Atkins* v. *Kinnan*, 20 *Wend*. 241. *Denning* v. *Smith*, 3 *John. Ch. Rep*. 332, 344.) The statute under which these proceedings before the surrogate were had, will be found in 1 *Rev. Laws of* 1813, *p*. 450, &c. The 23d section of the statute, at page 450, provides, "that when any executor or administrator, whose testator or intestate shall have died seised of any real estate, shall discover or suspect that the personal estate of such testator or intestate is insufficient to pay his or her debts, such executor or administrator shall, as soon as conveniently may be, make a just and true account of the

said personal estate as far as he or she can discover the same, *and deliver the said accounts to the judge of the court of probates, or to the surrogate of the county* in which the probate of the will or administration of the estate of any such testator or intestate shall have been had, and request his aid in the premises; and the said judge or surrogate shall thereupon make an order directing all persons interested in such estate to appear before him at a certain day and place in the same order to be specified, not less than six weeks nor more than ten weeks after the day of making such order, to show cause why so much of the real estate, whereof such testator or intestate died seised, should not be sold, as will be sufficicient to pay his or her debts; and which order shall be immediately thereafter published for four weeks successively in two or more of the public newspapers printed in this state, one of which shall be the paper, if any is published, in the county where probate of any such will shall be had or administration granted," &c. The statute further provides, that at the time and place specified in such published notice, the surrogate shall hear and examine the proofs and allegations of all persons interested, and "if the surrogate shall find that the personal estate of such testator or intestate is not sufficient to pay his or her debts, the said surrogate shall make an order for sale," &c. The first application to the surrogate, in this proceeding, is an ex parte one, and the appearance of no one is contemplated but the executors or administrators; and they are required to deliver to the surrogate a just and true account of the personal estate and debts as far as they can discover the same. This is absolutely necessary to confer jurisdiction upon the surrogate to make the order for publication. (*Ford* v. *Walsworth*, 15 *Wend.* 449. *Bloom* v. *Burdick*, 1 *Hill*, 130. *Atkins* v. *Kinnan*, 20 *Wend.* 241. *Ford* v. *Walsworth*, 19 *Id.* 334.) This was not done in the present case, and the result of the omission is that the surrogate acted without jurisdiction in making the order for publication. This was not cured by any subsequent proceedings in the case. But there is another equally fatal objection to the jurisdiction of the surrogate in these proceedings. There is not a particle of evidence

in the case to show that this order for appearance to show cause was ever published. This was a fact the defendant was required to show affirmatively, as it was necessary to confer jurisdiction upon the surrogate to make the order of sale This is a fact which it is highly important should appear in the case, and the absence of it renders the whole proceedings before the surrogate *coram non judice.* This notice to appear is in the nature of first process to summon the parties, and is indispensable to enable the surrogate to get jurisdiction of the persons of the parties interested in the proceedings. " It is," says the late Chief Justice Bronson, in the case of *Bloom* v. *Burdick,* (1 *Hill,* 139,) " a cardinal principle in the administration of justice, that no man can be condemned or divested of his right until he has had the opportunity of being heard. He must either by serving process, publishing notice, appointing a guardian, or in some other way, be brought into court, and if judgment is rendered against him before that is done, the proceedings will be as utterly void as though the court had undertaken to act where the subject matter was not in its cognizance." See also the following cases : *Borden* v. *Fitch,* (15 *John.* 121;) *Bigelow* v. *Stearns,* (19 *Id.* 39 ;) *Mills* v. *Martin,* (19 *Id.* 33.) That this notice serves the purpose of bringing in the persons to be affected by the proceedings, is held in the case of *Bloom* v. *Burdick,* (*supra,*) and the absence of such notice has been held, in all analogous cases, to be fatal to the jurisdiction. In the case of *Denning* v. *Corwin,* (11 *Wend.* 647,) a judgment of this court was held not valid where part of the premises belonged to owners unknown, unless the notice required by the statute in such case was duly published. And it was further held, that if the record did not show this, the judgment was absolutely void. So in the *Matter of Underwood,* an insolvent debtor, on an application for a discharge, the judge granted an order for ten weeks publication, in pursuance of the statute, and the publication only being six weeks, the judge then went on with the proceedings, and an order for an assignment was made; it was held that the order was a nullity, being made without authority ; and that the ten weeks publication was necessary to

give the judge jurisdiction. (3 *Cowen,* 59.) I cannot attach much importance to the argument urged by the defendant's counsel that we should presume the publication was made, because the omission would seriously involve the acts of a public officer, and that we ought to presume he did his duty. This presumption cannot prevail where it is resorted to to make out a vital jurisdictional fact. (*Bloom* v. *Burdick,* 1 *Hill,* 130.) And I cannot think that there is sufficient proof in this case of the appointment of guardians in the proceedings, for the plaintiffs who were then infants. If this was not done, then the surrogate acted without jurisdiction, and his acts are void as to infant heirs for whom no guardian was appointed. (*Bloom* v. *Burdick, supra.*) But even if we assume that there was sufficient proof of the appointment of guardians, it does not relieve the case from the difficulty of the question of the want of jurisdiction. For without the requisite publication of the notice, the surrogate had no jurisdiction to appoint the guardians. Again ; it appears in the case that the executors have not applied the personal property to the payment of the debts, but that on the contrary, they have paid it towards the bequests in the will. The 26th section of the act under which these proceedings were had, (1 *R. L.* 452,) provides " that no part of the real estate of any testator or intestate shall be ordered to be sold as aforesaid, unless the executors or administrators shall have duly made and filed an inventory of the goods, chattels and credits of such testator or intestate before the application for such sale, nor until the executors or administrators shall have applied the personal estate, or such part thereof as may have come to their hands, towards the payment of the debts of such testator or intestate ; and no more of the real estate shall be sold, in any case, than may be necessary to pay the residue of the said debts." This statute is very explicit, and is in terms prohibitory upon the power of the surrogate's court to order the sale of real estate to pay debts, until all of the testator's personal property has been applied to that object. It was insisted, however, by the defendant's counsel, that the personal property was bequeathed specifically to the widow and her son,

William Corwin, and that for that reason these executors were right in their proceedings in applying to sell the real estate to pay the debts, without first applying the personal property. If this were a turning point in the case, the question would be well worthy of a serious consideration; but it is unnecessary to decide this question; as the view that I have already taken of this case disposes of the defence set up. The plaintiffs are entitled to judgment upon their verdict, with costs,

