Argued 23 June; decided 7 July, 1902.

## LAWREY v. STERLING.

[69 Pac. 460.]

·MORTGAGING PROPERTY OF ESTATES—STATUTORY CONSTRUCTION.

1. The statute of 1898 authorizing executors and administrators to redeem real estate property sold on foreclosure or execution, and providing that the executor or administrator, with the consent of the county court, may borrow money on estate real property, and execute a mortgage thereon for the purpose of funding the indebtedness against the estate (Laws, 1898, p. 34, §§ 1 and 2), is not in conflict with Const. Or. Art. IV, § 20, providing that every act shall embrace but one subject and matters properly connected therewith; the subject of this act being the granting of power to executors or administrators to borrow money on the property of the estate, and the other power, that of redemption, a mere incident thereto.

ORDER TO MORTGAGE AN ESTATE—COLLATERAL ATTACK—JURISDICTION.

2. An order of a county court authorizing an administrator to mortgage the real property of an estate, based on a verified petition setting forth all the facts required by the statute to exist before such an order can be made, see Laws, 1898, p. 34, § 2, is conclusive, in case it is attacked collaterally, if the county court had jurisdiction to administer the estate, notwithstanding the application for permission to sell was by a petition, while the statute provides that the court may act when certain facts are "shown by affidavit."

COLLATERAL ATTACK ON AVERMENTS OF THE PETITION.

3. Where the petition by an administrator to borrow money on estate property to pay debts, as authorized by Laws, 1898, p. 34, states facts showing the need of a certain sum, an objection that the record of the court showed that it was unnecessary to borrow so large a sum will not be considered on collateral attack.

IMPLIED AUTHORITY OF ADMINISTRATOR TO GIVE NOTE FOR LOAN.

4. Under the familiar principle of statutory interpretation that, whenever a right is granted by law, the power necessary to make the right available is also impliedly conferred, a statute authorizing executors and administrators to mortgage the real property of estates (Laws, 1898, p. 34, § 1), confers also the authority to execute a promissory note for the loan, with such provisions as are in common use in the community, which, in Oregon, would include a promise to pay an attorney fee in case of suit or action.

POWER OF EXECUTOR TO BORROW MONEY—STATUTORY CONSTRUCTION.

5. A statute such as Laws, 1898, p. 34, § 2, authorizing executors or administrators to mortgage the real property of estates "for the purpose of funding the indebtedness," does not in any way make the number of creditors a factor in the question of the right to mortgage—it can be exercised to pay the debt of one creditor, or many.

IMPLIED POWER OF STATE LAND BOARD.

6. The State Land Board, which is authorized to loan the irreducible school fund, may assign a promissory note and a mortgage given to secure it, though such power of assignment is not expressly conferred by statute.

From Union: ROBERT EAKIN, Judge.

This is a suit by M. A. Lawrey to foreclose a mortgage. The facts are that, M. Sterling having died seised of certain real property in Union County, Oregon, the county court thereof appointed J. L. Caviness administrator of his estate, who, having duly qualified, filed in said court a verified petition, in pursuance of which he secured an order authorizing him to procure a loan of $2,484, to pay a certain claim against the estate and the expenses of administering thereon, and to give a mortgage on said land as security for the loan. He thereupon borrowed from the State Land Board, October 23, 1900, the sum of $2,084 belonging to the irreducible school fund; executing a promissory note therefor in his representative capacity, payable in one year, with interest at 6 per cent per annum; stipulating therein to pay a reasonable sum as attorney's fees, in case suit should be instituted to collect the same; and giving a mortgage on said real property to secure the payment of the note. The mortgage having been recorded, the note was assigned to the La Grande National Bank, which transferred it to plaintiff, who commenced this suit to foreclose the lien; making George W. Sterling, Schuler Sterling, Mary T. Jackson, and Henry V. Sterling, heirs of said deceased, and J. H. Lawrey, Thomas Wade, and A. Fergason, defendants; alleging in the complaint that such heirs were the owners in fee of said premises, and that the other defendants claimed some interest therein, but, if any such they had, it was inferior to plaintiff's lien. The defendants Henry V. Sterling, Thomas Wade, and A. Fergason, alone answered; denying each allegation of the complaint except the appointment and qualification of the administrator, and that said heirs were the only persons inheriting said property. A trial being had, the court found that there was due on the note the sum of $2,267.74, and that $200 was a reasonable sum as attorney's fees, and decreed a foreclosure of the mortgage, from which the defendants so answering appeal.                              AFFIRMED.

For appellants there was a brief and an oral argument by *Mr. Turner Oliver.*

For respondent there was a brief over the names of *James A. Fee* and *John H. Lawrey,* with an oral argument by *Mr. Lawrey.*

MR. JUSTICE MOORE, after stating the facts, delivered the opinion of the court.

The court having admitted in evidence, over the defendants' objection and exception, the order of the county court of Union County licensing the administrator to secure a loan and to give a mortgage on the real property of the decedent's estate as security therefor, the note and mortgage executed in pursuance of such authority, and the written assignment thereof to the La Grande National Bank, it is contended that the statute under which said order was made violates the organic law of the state; that the method prescribed for invoking the power of the county court to grant such order was not pursued; and that the State Land Board had no authority to assign the note and mortgage, and hence the court erred in admitting the evidence so objected to.

1. Considering the objections in their order, the constitutional provision claimed to have been violated is as follows: "Every act shall embrace but one subject, and matters properly connected therewith, which subject shall be expressed in the title": Const. Or. Art. IV, § 20. The statute in question, including the title, is found in Laws, 1898, p. 34, and reads as follows:

"An act to authorize executors and administrators to redeem real estate sold under decree or judgment, and to borrow money upon the property of the estate, to facilitate the settlement of the estates of decedents.

"Be it enacted by the Legislative Assembly of the State of Oregon:

"Section 1. That hereafter it shall be lawful for any executor or administrator of an estate of any decedent to redeem, for the benefit of the estate, any real estate belonging to the estate which may at any time hereafter be sold at public auction, either by

decree of court on foreclosure of mortgage or upon judgment, in the same manner and upon the same terms that property may be redeemed by any debtor.

"Sec. 2. That it shall be lawful for any executor or administrator, at any time hereafter, with the consent of the county court within whose jurisdiction such property may lie, to borrow money upon any property belonging to the estate, and to execute a mortgage thereon as security, for the purpose of funding the indebtedness against the estate, when it is shown by affidavit that the money can be secured for the same or a less rate of interest than that already paid, and for the further purpose of paying the interest on outstanding obligations that are liens on premises to be mortgaged when it is shown by affidavit to be necessary, whether said property has or has not before that time been mortgaged by the decedent or his executor or administrator.

"Sec. 3. That all acts and parts of acts in conflict with the foregoing be and the same are hereby repealed."

Approved October 15, 1898.

It is argued that this act embraces two disconnected subjects, both of which are expressed in the title, viz.: To empower the executor or administrator to redeem real property belonging to the decedent's estate that may be sold at public auction under a decree or judgment; and also to authorize him to borrow money on the property of the estate, giving a mortgage thereon as security. The object of the constitutional mandate that "every act shall embrace but one subject and matters properly connected therewith, which subjects shall be expressed in the title," was to prevent matters wholly foreign to the subjects specified in the title from being inserted in the body of the act: *Simpson v. Bailey,* 3 Or. 515; *McWhirter* v. *Brainard,* 5 Or. 426. An examination of the original bill (House Bill No. 58), on file in the office of the secretary of state, shows that it was entitled, "A bill for an act to facilitate the settlement of the estates of decedents." Section 2 thereof was as follows: "That it shall be lawful for an executor or administrator, at any time hereafter, with the consent of the county court within whose jurisdiction such property may lie, to borrow money upon any property belonging to the estate and to execute a mortgage thereon as security, whether said property has or has not before that time

been mortgaged by the decedent or his executor or administrator."
The judiciary committee of the house of representatives, to
which the bill was first referred, recommended an amendment
thereto, which, upon motion, was adopted (House Jour. 1898,
p. 222), and became section 2 of the act, no other changes
having been made in the original bill except the title, which
was amended (House Jour. 1898, p. 128), as hereinbefore quoted.
A comparison of the original bill with the act as passed discloses
that the only amendment adopted contains a statement of the
purposes for which money may be borrowed, and prescribes the
method whereby the consent of the county court may be secured.
The act does not, in express terms, authorize the borrowing of
money with which to redeem real property belonging to the
decedent's estate, that may have been sold under a decree or
judgment; but, as a lien of this character is an indebtedness
against said estate, the right to borrow money for the purpose
of funding such indebtedness necessarily carries with its exercise
a grant of power to borrow money to be used in redeeming real
property from such sales. An analysis of the language of the
act, so construed, shows that its subject is to authorize the bor-
rowing of money on the property of a decedent's estate, to redeem
it from sale under a decree or judgment, or to fund other indebt-
edness against the estate, including interest on outstanding
obligations that are liens on the premises to be mortgaged.
Without the power to borrow money, it might be impossible to
redeem such real property from sale, but by the method pre-
scribed, the legislative assembly has wisely provided a means
whereby premises sold for an inadequate sum may be saved to
the heirs, and the day of immediate payment of a debt postponed;
thereby possibly tiding the property over the period of a ruinous
panic. So, too, an exercise of the authority to borrow money
to be used in funding the indebtedness of a decedent's estate may
prevent a sale of the property at an inopportune time; thereby
retaining the title until, possibly, the rents and profits pay the
mortgage necessarily placed thereon by the executor or admin-
istrator, whereupon the heirs may take the premises freed from
all obligations. The subject of the act under consideration is,

therefore, the granting of power by the county court to an executor or administrator to borrow money, and the incident to the exercise of such power is the right to use the money so borrowed in paying the indebtedness against the estate of a decedent, including the redemption of the real property thereof that may be sold under a decree or judgment. The purpose for which the money may be used is properly connected with an exercise of the power to borrow it. The title of the act might have been transposed so as to conform to the interpretation here given, but in the form adopted by the legislative assembly it fairly expresses the single subject of the act, and, so long as it does so, no reason exists for declaring the statute in contravention of the clause of the constitution invoked to establish its invalidity: *Anderson* v. *City of Camden,* 58 N. J. Law, 515 (33 Atl. 846); *David* v. *Portland Water Com.* 14 Or. 98 (12 Pac. 174); *State* v. *Koshland,* 25 Or. 178 (35 Pac. 32).

2. Did the administrator pursue the method prescribed by the act, so as to confer jurisdiction upon the county court to make the order authorizing him to borrow the money and to execute a mortgage as security therefor? It will be remembered that the statute empowers the county court to license an executor or administrator to borrow money upon the property belonging to the decedent's estate, and to give a mortgage thereon as security for the loan, when it is shown by affidavit that the money, to be used in funding the indebtedness against the estate, can be secured for the same or a less rate of interest than that already paid. The petition, filed by the administrator June 6, 1900, upon which the order of the county court is based, is as follows:

"In the County Court of the County of Union, State of Oregon.
"In the matter of the Estate of
   M. Sterling, Deceased.
"To the Hon. B. F. Wilson, County Judge of Union County,
   Oregon:
   "Comes now J. L. Caviness, and represents that he is the duly qualified and acting administrator of the estate of M. Sterling, late of Union County, Oregon, now deceased; that said estate has paid all claims and expenses due by the same with the exception

of balance of claim of J. L. Caviness, which was not a preferred
claim, but presented after the first six months of administration,
now amounting to the sum of $1,884.00, together with the fees
due the administrator of about $600.00; that said claim is draw-
ing interest at the rate of eight per cent per annum, and that a
loan can be had on the lands of the estate at no greater rate, and
probably for less, to wit: 7 per cent per annum; that, by obtain-
ing a loan of $2,484.00, the said claim may be fully paid, the ad-
ministration closed, and the estate lands turned over to the heirs
with such mortgage, and save further administration and ex-
pense; that it will be for the best interests of the said estate to
obtain a loan upon the estate lands, and mortgage so much
thereof as is necessary to obtain said loan, and pay said estate,
and prevent further expense, so that the heirs may have said
lands.

"Wherefore your petitioner, the said administrator, prays for
an order and license empowering him to execute a mortgage on
the estate lands, or so much thereof as shall be necessary, and
close up said estate.

"J. L. Caviness, administrator.

"STATE OF OREGON, County of Union, ss.:

"I, J. L. Caviness, being first duly sworn, say that I am the
duly appointed, qualified, and acting administrator of the estate
of M. Sterling, deceased, in said above entitled court, and the
foregoing, my petition, is true, as I verily believe.

"J. L. Caviness.

"Subscribed and sworn to before me this 31st day of May,
A. D. 1900.

[SEAL]                                    "C. H. Finn,
                              "Notary Public for Oregon."

It is argued that, as an executor or administrator at common
law was powerless to mortgage the real property of a decedent,
a statute conferring such authority should be strictly construed,
and that, giving to the act under consideration such interpreta-
tion, a petition was ineffectual to invoke the jurisdiction of the
county court to grant the license demanded, and hence an error
was committed in decreeing a foreclosure of said pretended
mortgage. An affidavit is a written declaration under oath, made
without notice to the adverse party: Hill's Ann. Laws, § 803.
In all affidavits and depositions, the witness must be made to
speak in the first person: Hill's Ann. Laws, § 806. An affidavit

may be used in any case expressly provided by this code or other statute: Hill's Ann. Laws, § 808.  The word "petition," as used in a statute, is generally understood to mean a written application, addressed to a court or judge, praying for the exercise of some judicial power, or to a public officer, requesting the performance of some duty enjoined upon him by law or the exercise of some discretion with which he is vested: *Bergen* v. *Jones,* 4 Metc. (Mass.) 371.  While, according to the definition of the word "affidavit," as generally given (1 Ency. Pl. & Pr. 309; *Dewey* v. *Linscott,* 20 Kan. 684; *State* v. *Green,* 15 N. J. Law, 90; *Burns* v. *Doyle,* 28 Wis. 463), a distinction exists between it and a "petition," the question is, was the latter sufficient to invoke the jurisdiction of the county court, authorizing it to grant the license demanded, when the act under consideration specified that an affidavit was the means adopted by the legislative assembly for that purpose?  Assuming that the county court of Union County acquired jurisdiction originally to grant administration upon the estate of M. Sterling, deceased, the proceeding for license to execute a mortgage on his property is a distinct and independent matter, in the nature of a suit, in which the written application is the commencement and the order granting the license is the decree: *Haynes* v. *Meeks,* 20 Cal. 312.  In *Wright* v. *Edwards,* 10 Or. 298, Mr. Justice LORD, referring to a decree of this character, says: "When such an order is made, after jurisdiction has attached, it cannot be questioned collaterally, whatever errors or irregularities may intervene thereafter."  Further in the opinion he says: "Where there is matter of substance upon which jurisdiction can hinge, mere errors or defects, although material in some respects, but which might have been avoided on appeal, cannot avail to condemn a judicial proceeding when, by lapse of time, an appeal is barred, which has become the foundation of title to property.  But the case is different where there is an entire want of facts, prerequisite to jurisdiction, disclosed upon the face of the petition."  It is the averment of facts necessary to confer jurisdiction of the subject-matter, in a written application invoking an exercise of the court's authority, that warrants it in granting the measure

of power delegated: *Walker* v. *Goldsmith,* 14 Or. 125 (12 Pac. 537). Jurisdiction, therefore, depends upon the allegation of material facts, and not upon the manner of stating them.

A fair construction of the act of October 15, 1898, warrants us in saying that it empowers the county court to license an executor or administrator to give a mortgage on the decedent's property as security for money borrowed, to be used for either of the following purposes: (1) To find the indebtedness against the estate, including the redemption of any of the decedent's real property that may have been sold under a decree of foreclosure or upon a judgment; and (2) to pay the interest on the outstanding obligations that are liens on premises to be mortgaged. The showing required to be made to secure an order of the court authorizing the representative of the decedent's estate to borrow money is, in the first instance, the existence of the indebtedness against the estate, and that money can be borrowed for the same or a less rate of interest than that already paid; and, in the second case, it would appear, though not involved in the case at bar, the existence of the outstanding obligations that are liens on the premises to be mortgaged, and that it was necessary to borrow the money for the purpose of paying such interest. The administrator's petition stated that the estate was indebted to him in the sum of about $1,884, which was drawing interest at the rate of 8 per cent per annum; that the fees due him amounted to about $600; and that money could be borrowed to pay said claim and expenses at the same or less rate of interest than he was receiving. The petition stated all the facts necessary to an exercise of the court's power, and certainly contained matters of substance upon which jurisdiction could hinge: *Wright* v. *Edwards,* 10 Or. 298. The county court, in the administration of estates, exercises its powers by means of an affidavit, or the verified petition or statement of a party (Hill's Ann. Laws, § 1078, subd. 2) ; and, while the rule is well settled that, in construing a statute, it is generally held that the inclusion of one mode means the exclusion of all others, we believe, in a collateral attack, where, as in the present instance, the petition avers such a state of facts as would confer jurisdic-

tion under the general statute, that jurisdiction of the subject-matter was thus secured notwithstanding an affidavit was not employed for the purpose, as prescribed by the special act. The county court of Union County is a court of record, and in probate matters, except when its decrees are brought up on writ of review or appeal (*Garnsey* v. *County Court,* 33 Or. 201, 54 Pac. 539, 1089; *Malone* v. *Cornelius,* 34 Or. 192, 55 Pac. 536), is invested with superior jurisdiction (Const. Or. Art. VII, § 12; Hill's Ann. Laws, § 895; *Tustin* v. *Gaunt,* 4 Or. 305; *Monastes* v. *Catlin,* 6 Or. 119; *Richardson's Guardianship,* 39 Or. 246, 64 Pac. 390) ; and, while it may have been exercising a statutory power in derogation of the common law, its jurisdiction was invoked according to the general rule, and hence jurisdiction attached, rendering its decree invulnerable to collateral attack.

3. It is maintained that the records of the county court show that it was unnecessary to borrow more than $1,456, to discharge the indebtedness against the estate, and that the court erred in rendering a decree for a greater sum and the interest thereon. The point contended for is without merit, for, the petition having stated facts showing the need of borrowing the sum loaned, jurisdiction to license the execution of a mortgage therefor attached, and, this being so, the truth of the averment cannot be controverted on collateral attack: *Stuart* v. *Allen,* 16 Cal. 501 (76 Am. Dec. 551) ; *Griffin* v. *Johnson,* 37 Mich. 87.

4. It is argued that the statute does not authorize an administrator or executor to give a promissory note or promise to pay attorney's fees, and, this being so, the court erred in decreeing the recovery of any sum on account thereof. It is a familiar principle of interpretation that, whenever a right is granted by statute, that without which the right itself could not exist is also given by implication: Sutherland, Stat. Const. § 343. Thus, as stated by Mr. Jones in his work on Mortgages (4 ed.) § 129 : "A power to mortgage given in general terms, without specifying the provisions the deed shall contain, includes the power to make it in the form and with the provisions customarily used in the state or county where the land is situated." Construing strictly the provisions of the statute authorizing an executor or

administrator to borrow money, as is the rule in determining a grant of power to a municipal corporation, could the' personal representative of M. Sterling's estate issue, as evidence of the money borrowed, any instrument except the mortgage specified in the act? Notwithstanding a strict construction is adopted in determining the measure of power secured by a city charter, the rule being that a municipal corporation can exercise no powers except such as are expressly conferred, or are essential to the manifest objects and purposes of the corporation (*City of Corvallis* v. *Carlile,* 10 Or. 139, 45 Am. Rep. 134; *Hubbard* v. *Town of Medford,* 20 Or. 315, 25 Pac. 640), it has been held that a power conferred by the legislative assembly upon a municipal corporation to borrow money carried with it, by implication, authority to issue to the lender, "as a voucher for the repayment of the money, evidence of indebtedness in the shape of non-negotiable paper": *Brenham* v. *German Am. Bank,* 144 U. S. 173 (12 Sup. Ct. 559). Power to borrow money, in the absence of authority to give a mortgage as security therefor, necessarily carries with the grant the right to issue, as evidence of the loan, vouchers of indebtedness; and this right ought not to be defeated because the statute also confers authority to give a mortgage. The power of an agent to execute promissory notes for his principal will be strictly construed, the rule being that such authority is not conferred unless clearly given or necessarily implied (*Connell* v. *McLoughlin,* 28 Or. 230, 42 Pac. 218); notwithstanding which, it has been held that an agent's authority to execute a promissory note, so as to bind his principal, will be implied when the instrument was given for goods necessary to the transaction of the latter's business, which were used for his benefit, or purchased in pursuance of his authority: *Smith* v. *Gibson,* 6 Blackf. 639; *Odiorne* v. *Maxcy,* 13 Mass. 177. If it be assumed that the administrator was an agent, and the grant of power to borrow money is to be strictly construed, the right to issue a promissory note, as evidence of the loan, which was secured for the benefit of the estate in pursuance of law, is reasonably inferable from the power delegated. To the same effect, see *Wilson* v. *Troup,* 2 Cow. 195 (14 Am. Dec. 458).

By analogy, the power to borrow money conferred upon an executor or administrator by the statute evidently carries with it, by implication, authority to execute promissory notes evidencing the loan, expressing the rate of interest stipulated for, and fixing the day of payment, and also confers the right to execute an instrument in the form and containing the provisions in common use: Jones, Mort. § 129. It is the common practice, in this state, to include in a promissory note a stipulation for the payment of such sum as the court may adjudge reasonable for attorney's fees in case suit or action should be instituted to collect the sum specified in the note, or any part thereof; and, this being so, the administrator was authorized to include in the note in question such a promise.

5. It is argued that the act licensing an executor or administrator to borrow money, for the purpose of funding the indebtedness against a decedent's estate, limits the right to secure a loan to pay the claim of many creditors, and that the petition upon which the order was based, authorizing the borrowing of money, having disclosed that Caviness was the only creditor of the estate of M. Sterling, deceased, no authority existed for borrowing the money to pay his claims. In support of this principle, our attention has been called to the case of *Ketchum* v. *City of Buffalo,* 14 N. Y. 356, in which Mr. Justice SELDON, speaking for the court, says: "The term 'funding,' however, has been sometimes applied in this country to the process of collecting together a variety of outstanding debts against corporations, and borrowing money upon the bonds and stocks of the corporation to pay them off; the principal of such bonds and stocks being made payable at periods comparatively remote. But I am not aware that, even in common parlance, the term has ever been made use of to describe an ordinary debt, growing out of a transaction with one individual, and represented by a single instrument, as in this case. I think it is essential to the idea of a funded debt, even under the broadest use of that term, that the debt should be divided into parts or shares, represented by different instruments, so that such parts

or shares may be readily transferrable." In the case from which this excerpt is taken it was held, in construing an act of the legislature of New York prohibiting the contracting by a municipal corporation of a "funded debt" except in the mode pointed out, that the purchase of a site by a city for a market was not violative of such provision. Whatever the definition of "funding" may be when applied to the indebtedness of a municipal corporation, the explanation so given can have no application to the indebtedness against the estate of a decedent, for the word "funding," as used in the statute, was evidently designed to mean the borrowing of a sufficient sum of money to discharge the claims against an estate, by creating another debt in lieu thereof; and, while an estate may owe only one person a certain sum, it is just as much an indebtedness, and equally as susceptible of being funded, as though the claim were divided into a given number of parts, and held by several creditors. The conclusion thus announced must inevitably follow; for the object of the act was to prevent the sale of a decedent's property to satisfy demands against it, and, if money could not be borrowed to discharge the claims of a single creditor, the purpose of the act could be thwarted, and a sale of such property compelled by a person desiring to purchase it, who secured an assignment of all the claims against the estate. A statement of the consequences that might thus result shows the fallacy of the argument, and demonstrates that the county court was authorized to license the administrator to borrow money for the purpose of paying, or funding, his indebtedness against the estate.

6. It is contended that the State Land Board is a body of limited power having authority to loan the irreducible school fund of the state, taking mortgages as security therefor, and, while said board may institute a suit to foreclose a mortgage in case of a breach of its condition, or may accept a release of the equity of redemption (Laws, 1899, p. 156), no power is vested in said board to assign the notes and mortgages evidencing such loans. It is provided by the state constitution that the governor, secretary of state, and state treasurer shall constitute a board of commissioners for the sale of school and university lands,

and for the investment of the funds arising therefrom, and their powers and duties shall be such as may be prescribed by law: Const. Or. Art. VIII, § 5. And it is provided by statute that the governor, secretary of state, and state treasurer, as a board of commission for the sale of school and university lands and for the investment of the funds arising therefrom, shall be styled the "State Land Board," and such board shall have power, and is hereby authorized, to use a common seal, and the secretary of state shall procure such a seal for said board: Laws, 1899, p. 156, § 2. Whether the State Land Board is a corporation within the rule announced in *Dunn* v. *University of Oregon,* 9 Or. 357, or the officers composing such board are the agents of the state, which had an equitable interest in the note and mortgage in trust for the support of the common schools, it is unnecessary to consider, for in either case a corporation was charged with the duty of collecting the note, and, so long as a corporation violates no express·restriction, it may take any usual or appropriate steps to realize on the securities taken by it: 7 Am. & Eng. Enc. Law (2 ed.), 802. It follows from these considerations that the decree is affirmed.          AFFIRMED.

Argued 30 June; decided 14 July, 1902; rehearing denied.