Argued April 12; affirmed May 10; petition for rehearing
denied June 21, 1949

## MUMPER *v.* MATTHES
206 P. 2d 86

*Paul R. Hendricks* and *John H. Carson,* of Salem, argued the cause and filed a brief for respondent.

*Roy R. Hewitt,* of Salem, argued the cause and filed a brief for appellant Pearl S. Matthes.

*Harry G. Hoy,* of Portland, argued the cause for appellants Mumford. With him on the brief were Hoy and Prag, of Portland.

Before LUSK, Chief Justice, and BRAND, BELT and BAILEY, Justices.

BRAND, J.

Plaintiff filed an original complaint against which a demurrer was filed and sustained. By her amended complaint the plaintiff alleges that on the 31st day of October, 1931, L. C. Matthes executed and delivered to the plaintiff Marie Mumper and to her husband, W. A. Mumper, a promissory note, a copy of which is set forth in the complaint. The note is dated at Salem, Oregon, October 31, 1931, for the principal sum of $2000 and is made payable two years after date. The payees are W. A. Mumper and Marie Mumper. It bears interest at six per cent payable annually, with provision for acceleration of maturity in event of default. It contains the usual provisions for attorney's fees and is signed by L. C. Matthes.

Plaintiff further alleges that L. C. Matthes was the owner of an undivided one-eighth interest in certain real property described in said complaint and that on 31 October 1931 L. C. Matthes, acknowledging himself to be a single man, executed a mortgage to secure said note, which mortgage was duly recorded on the same day. The defendant Pearl S. Matthes, as administratrix of the estate of L. C. Matthes, deceased, admits the foregoing allegations. The amended com-

plaint further alleges that plaintiff is the owner and holder of the note and mortgage, that no part of the interest or principal has been paid except $50 paid on interest on 15 September 1940. Then follow the usual allegations concerning the amount due, demand for payment and prayer for judgment against the estate of L. C. Matthes, and foreclosure of the mortgage. It is also alleged that the defendants Mumford claim some interest in the real property which is inferior in right to the plaintiff's lien. The answer of the defendant Matthes as administratrix denies that the note is unpaid or that any sum is due thereon, or that any demand had been made, but "admits" that defendants Mumford have title in fee to the land. As a separate answer to the amended complaint, defendant Matthes as administratrix alleges that she is the widow and sole heir of L. C. Matthes, deceased, and that she:

> "* * * in full and complete payment and satisfaction of the note described in plaintiff's Amended Complaint, and the mortgage to secure the same, set out in plaintiff's Amended Complaint, on the 24th day of October, 1941, quit-claimed by deed to plaintiff, the widow of W. A. Mumper, deceased, the property described in plaintiff's Amended Complaint. That the said quit-claim deed was received and accepted by plaintiff in payment of the said note and the satisfaction of the said mortgage. That the said deed was acknowledged so that the same might be recorded, and plaintiff caused the same to be recorded on the 24th day of October, 1941, in Volume 264, on page 612, of the Record Deeds for Marion County, Oregon."

The defendants Mumford filed a motion to strike the amended complaint upon two alleged grounds; first, that the court had sustained a demurrer to the original complaint and had made no order permitting the filing

of the amended complaint, and second, that by reason of the allegations contained in the original complaint, the plaintiff should be estopped from alleging the matters contained in the amended complaint. The court denied the motion to strike and thereafter the defendants Mumford filed an amended answer to the amended complaint wherein they deny that plaintiff is the owner of the note or mortgage, deny the execution of the promissory note, admit that L. C. Matthes on the 31st day of October, 1931, was the owner in fee of an undivided one-eighth interest in the property described, deny the execution of the mortgage, but admit the recordation of a purported mortgage. They deny that the note is unpaid or that any amount is due or owing, or that any default was made or payment demanded, and deny that plaintiff is entitled to any attorney's fee.

As a first affirmative defense, the defendants allege that on or about the 24th day of October, 1941, a dispute arose between the plaintiff and Pearl S. Matthes, as the widow and sole heir-at-law of L. C. Matthes, as to the validity of said note and mortgage and that at said time the parties entered into an accord and satisfaction, by the terms of which Pearl S. Matthes, as widow and sole heir-at-law of L. C. Matthes, was to quit-claim to the plaintiff Mumper all of her right, title and interest in the real property in consideration of the sum of $500 to be paid by the plaintiff Mumper to Pearl S. Matthes, as widow and sole heir-at-law of her husband. It is further alleged that by the terms of the accord, the plaintiff should satisfy the mortgage and cancel the note. It is then alleged that Pearl S. Matthes, as widow and sole heir-at-law of her husband, executed and delivered to the plaintiff a quit-claim deed to the described property, which deed

was accepted by the plaintiff in full satisfaction of the disputed claim concerning the note and mortgage, and that the plaintiff caused the said quit-claim deed to be recorded.

By way of a second affirmative defense, the defendants Mumford allege that on the 11th day of July, 1946, the plaintiff filed a verified complaint which defendants attempt to incorporate in their answer by reference. Defendants allege that in said original complaint plaintiff alleged:

"II

"* * * in subdivision numbered XIII of said complaint that on October 24, 1941, after negotiations between the plaintiff and Pearl S. Matthes an agreement was reached by the terms of which plaintiff was to forego foreclosure of the said mortgage referred to in the amended complaint in this suit and was to cancel the said note and mortgage, which is the subject matter of the complaint in this suit and was to pay to the defendant Pearl S. Matthes $500.00 in cash in consideration of said Pearl S. Matthes deeding to the plaintiff the one-eighth interest of the said Pearl S. Matthes in the real property covered by the said alleged mortgage.

"III

"By subdivision numbered XIV of the said original complaint the plaintiff further alleges in a solemn declaration, all verified by her oath, that she paid to the said Pearl S. Matthes the said sum of $500.00 and further alleges in said subdivision that thereafter the administratrix of the estate of Lewis C. Matthes, deceased, instituted and completed an administratrix' sale of the said real property."

It is further alleged that Katherine Mumford purchased the property at the administratrix' sale and that Homer L. Mumford is the husband of Katherine Mum-

ford. It is alleged that Pearl S. Matthes did execute and deliver the deed to the plaintiff Mumper. By reason of the foregoing allegations, the defendants Mumford assert that the plaintiff is estopped to allege that she owns a valid note or mortgage on the premises, or that the defendant Katherine Mumford is the owner of the said undivided one-eighth interest in the real property described.

As a third affirmative defense, the defendants Mumford allege that the mortgage sought to be foreclosed was given to secure a promissory note dated 31 October 1931, was due two years after date, and that the suit for foreclosure was filed on 11 July 1946, that no payments were made on the indebtedness evidenced by the note, and no action taken by the parties thereto to toll the running of the statute of limitations, and that the suit to foreclose is therefore barred by said statute.

On 18 February 1947 the plaintiff filed replies to both answers which were in the nature of general denials of the affirmative allegations of the respective answers. The answer of the defendant Matthes fails to deny that the plaintiff is sole owner of the note and mortgage. She thereby admits that allegation of the amended complaint. Even if we construe that admission to mean only that the plaintiff owns a void or canceled note and mortgage, still, we are confronted by a more serious defect in the case of defendant Matthes. The most careful examination fails to disclose any assignment of error, either formal or informal, in her brief. Nothing need be added upon this subject to the rule explicitly laid down by this court in *Buel v. Matthes,* 186 Or. 160, 197 P. (2d) 687, 205 P. (2d) 551.

No question for our consideration being presented by any assignment of error in the brief of the

defendant Matthes, we turn to the assignments set forth in the brief of the defendants Mumford. The first assignment is as follows: "The Court erred in denying the Motion of the defendants Mumper to strike the said Amended Complaint and for judgment." In support of this assignment it is asserted that the plaintiff had filed an original complaint to which the court had sustained a general demurrer and that thereafter the plaintiff filed an amended complaint without securing an order of the court permitting her to plead over. Defendants Mumford contend that under these circumstances the court should have stricken the amended complaint. Assuming, but not deciding, that the notice of appeal from the final decree was sufficient to present this question as to the propriety of the order denying the motion to strike, we hold that since the court had discretionary power to allow the filing of an amended complaint prior to the filing thereof, it also had power to validate a premature filing. This in effect the court did by denying the defendants' motion to strike the amended complaint. Thereafter the defendants Mumford answered the amended complaint and went to trial upon the issues made.

Defendants Mumford also claim that in their motion to strike the amended complaint they set up facts which raised an estoppel against the plaintiff and hence that the ruling on the motion to strike is before this court on the appeal from the final judgment, but the facts constituting an estoppel should be, and in this case they were pleaded, in the defendants' answer which was the proper method of raising the question rather than by a motion to strike the amended complaint. When the amended complaint was filed, the original ceased to be a part of the pleadings. If the facts alleged in

the original constituted an estoppel against the plaintiff upon his amended complaint, the defendants were entitled to plead the estoppel by answer and introduce the original complaint in evidence by way of proof. This they did. The court committed no error in denying the motion of defendants Mumford to strike the amended complaint. It follows that the issues between the plaintiff and the defendants Mumford are those made by the amended complaint, the answer and reply.

Before passing upon the alleged errors assigned in the brief of the defendants Mumford we must consider their standing in this case to assert error. So far as the record shows they were strangers to the entire transaction until they became purchasers at a purported administrator's sale which was had in the estate of L. C. Matthes, deceased, which sale was confirmed prior to the filing by the plaintiff of the suit to foreclose the mortgage. If the administrator's sale was void, then the defendants Mumford have no interest in these proceedings and no standing to challenge the validity of the mortgage foreclosure. We therefore direct our attention to the proceedings on which the validity of the administrator's sale depends.

The statute provides:

"No sale of the property of an estate is valid unless made by order of the court or judge thereof, as in this chapter prescribed, unless herein otherwise provided. The application for an order of sale shall be by the petition of the executor or administrator, and in case of real property, a citation to the heirs and others interested in such property." O. C. L. A., § 19-801.

O. C. L. A., § 19-805 which was in effect when the petition was filed authorizes the sale of real property

under the conditions therein specified. The statutory requirements of an application for the sale of real property were as follows:

> "The petition for the order of sale of real property shall state the amount of sales of personal property, the charges, expenses and claims still unsatisfied, so far as can be ascertained, a description of the real property of the estate, the conditions and probable value of the different portions or lots thereof, the amount and nature of any liens thereon, the names, ages and residences of the devisees, if any, and of the heirs of the deceased, so far as known, and if it is desired to sell the real property or any part thereof before the sale of the personal property as provided in section 19-805, the petition shall set out the reasons therefor." O. C. L. A., § 19-806 as amended by Oregon Laws 1945, ch. 229.

O. C. L. A., § 19-807 provides that upon the filing of the petition a citation shall issue to the devisees and heirs therein mentioned and to all other devisees and heirs unknown, citing them to appear within the time specified and to show cause. O. C. L. A., § 19-808 provides for the manner of service of citation. O. C. L. A., § 19-809 provides that "upon the hearing" if the court finds that it is necessary that the real property or any portion thereof should be sold, it shall make the order accordingly and prescribe the terms thereof, "whether of cash or credit, or both" and provides for the giving of additional bond if the original bond of the administrator is insufficient. O. C. L. A., § 19-810 as amended by Oregon Laws 1941, ch. 416, provides that if it appears to the court that it would be for the best interests of the estate, the court may order that the administrator may sell all the real property of the estate or any part thereof at private sale. The same section provides that "Before proceeding to sell the real property of an

estate at private sale as aforesaid, the executor or administrator shall publish a notice, particularly describing the property to be sold, for four weeks successively in a newspaper of the county where the property to be sold is situated * * *''. The same section provides that the administrator shall post copies of said notice in three public places of the county. O. C. L. A., § 19-815 provides that the administrator shall make a return of his proceedings and file the same within ten days after the sale and that any time within fifteen days from the filing of said return any person cited to appear on the application for the order of sale may file objections. By O. C. L. A., § 19-824 it is provided that the order of confirmation of sale in this chapter mentioned is ''conclusive as to the regularity of the sale and no further.''

After the appointment of Pearl S. Matthes as administratrix on 10 March 1941 she qualified by taking the oath of office and by filing a bond in the sum of $1,000. Thereafter the administration of the estate dragged on until 20 May 1946 when she filed a petition for an order authorizing the sale of real property at private sale for cash on the premises for the best available price. In that petition she purported to describe an undivided one-eighth interest in the following:

"Beginning in the center of the county road at the Southwest corner of the land formerly owned by A. F. McAtee, Angeline McAtee and Rachel Smith, said beginning point being also the Northwest corner of the land then owned by A. Bush in the Donation Land Claim of Sanford Stevens and wife in Township 6 South Range 2 West of W. M. and running thence North along the center of said county road 19.52 Chains; thence, East parallel with the North line of Sanford Stevens and wife Dona-

tion Land Claim 41.00 Chains; Thence, South parallel with the East boundary line of said A. Bush land and parallel with the North boundary line of said Claim 41.00 Chains to the place of beginning, and containing 80.03 Acres of land, more or less, the same being part of the Donation Land Claim of Sanford Stevens and wife, Claim no. 37, Not. 367, in Township 6 South Range 2 West, in Marion County, State of Oregon.''

Even at that time the only claims listed in the petition amounted to the total sum of $142.50. In the petition she also alleged that ''the completion of the administration of this Estate, including the sale of the real property, will cost not less than $250.00.'' She alleged that it was necessary and for the best interests of the estate that the real property be sold and that the notice of time and place and terms of sale should be published as required by law in a newspaper specified by her. No citation was issued and on 20 March 1946, the day on which the petition was filed, the court, apparently without any hearing, made an ex parte order in conformity with the terms of the petition for the sale of the real property. The description was identical to that contained in the petition. On 4 May 1946 the defendant Matthes filed her report of sale of real property, describing the property as it was described in the petition, reciting that the sale was made for the sum of $1,500 and that ''said sale was made subject to the cloud cast upon the title to the said premises by the claim of Marie Mumper made in her offer to purchase.'' In the report of the sale the defendant Matthes alleges that the mortgage and note of the plaintiff was given without consideration or that it has long since been paid in full and if it has not been paid in full it is limited by the statute. On the same day the circuit

judge made an order confirming the sale and reciting the same matters which were contained in the return on the sale. Both the return of the sale and the order confirming, as well as the published notice of administrator's sale of real property contained the same description which appeared in the description for the order of sale. We find proof of the publication of the notice of administratrix' sale of real property but no proof of posting any notices as required by statute. On 7 May 1946 the plaintiff moved for an order setting aside the confirmation of sale. The defendant Matthes sold the property on 29 April 1946. She filed an additional $500 bond on 8 May 1946 in the sum of $500 which was approved on that date. On 20 May 1946 the circuit court denied the motion to set aside the confirmation of sale.

■ A comparison of the record as above set forth with the requirements of statute will show many irregularities in connection with the sale. This, however, is a collateral attack upon the sale and it follows that if the court had jurisdiction, the order of confirmation is conclusive as to the regularity of the sale, but "no further." O. C. L. A., § 19-824. The serious question is whether the court ever acquired jurisdiction to make the sale.

We have already set forth the purported description of the real property as contained in the petition for sale. An examination of that description compels the conclusion that the petition fails to comply with the requirements of O. C. L. A., § 19-806 as amended. It does not contain a "description of the real property".

■ The third call of the deed "Thence South * * *", etc., attempts to describe a straight line which is parallel to two lines which are at right-angles to each other. If

we disregard the difficulty involved in such an effort, we still have as the third call a line running south 41.00 chains onto lands apparently belonging to A. Bush, to a point which purports to be, but is not, the place of beginning. The westerly boundary and the northerly boundary could probably be located by a surveyor. The description of the easterly boundary is unintelligible and the fourth boundary line, if there is one, is entirely omitted. The purported description is fatally defective. This is not a case of a deed containing a defective description concerning which parties are attempting by parol or extrinsic evidence to cure the defects. No attempt was made to correct the error, either in the petition, the order for sale, the published notice of sale, or the order confirming the sale. It is contained in the petition on the basis of which property was to be sold, not by conveyance of its owner, but by proceedings in invitum. Based on the petition the same description was published, inviting persons to bid at the sale. The petition for sale also fails to contain any statement as to the condition or probable value of the land attempted to be described or the amount or nature of any lien thereon or the names, ages or residences of any devisee or heir, all of which is required by the provisions of O. C. L. A., § 19-806 as amended. It will be remembered that more than five years had elapsed since the plaintiff was appointed administratrix and that no report of any kind had been made as to the use to which the land had been put during that period or as to the rents and profits therefrom. The tract to be sold purports to be an undivided one-eighth interest in 80.03 acres. The petition contains no information from which the court could determine who had been in possession of the land of the estate for the preceding five years or whether there had been or would be rents or profits

therefrom, therefore it was impossible for the court to know whether a sale of any land was necessary.

Our inquiry as to the law may well begin with the case of *Haynes v. Meeks,* 20 Cal. 288, decided in 1862 by Field, C. J. In that case there was a collateral attack by means of an action of ejectment against the validity of an administrator's sale. As in the case at bar, a first administrator had been removed and a second administrator petitioned for the sale. The court said of the petition:

"* * * And in respect to the real property, the petition is still more glaringly defective. It simply states that two parcels of land, giving their description and value, situated in the city of San Francisco, belong to the estate. It said nothing of the condition of those parcels—whether they were improved or waste lands; whether they were yielding income or burdening the estate with expenses—from which the court could determine as to the necessity of their sale. Nor does it purport to give a description of all the real estate of which the intestate died seized. So far as appears, several other parcels may also have belonged to the estate, which it would have been more advantageous to the heirs to have sold than the parcels described."

The court said further:

"The authority of the Probate Court to order a sale of real property of an estate is derived entirely from the statute. It is a limited, and not a general authority. It may be exercised in certain specially designated cases; it can be exercised in no other. (People v. Corlies, 1 Sand. 247; Corwin v. Merritt, 3 Barb. 343; Bloom v. Burdick, 1 Hill, 139; Currie v. Stewart, 27 Miss. 55; 61 Am. Dec. 500; Laughman v. Thompson, 6 Smedes & M. 259; Wiley v. White, 3 Stewt. 355; Townsend v. Gordon, 19 Cal. 189.) When, therefore, an order of sale is relied upon,

the question is, was the order made in a case provided by the statute? To determine this, we must, in the first instance, look to the petition for the sale, which is the foundation of the order; assuming, of course, that the court acquired jurisdiction originally to grant administration upon the estate. The proceeding for the sale, though made in the general course of administration, is a distinct and independent proceeding, in the nature of an action, of which the petition is the commencement, and the order of sale is the judgment.   \*  \*  \*''

Again the court said:

"\*  \*  \* But this is not all; it must also appear by the petition 'that it is necessary to sell the whole, or some portion of the real estate,' for the payment of the debts and charges. (§ 155.) Such necessity does not follow as a matter of course from the insufficiency of the personal property. The real estate may be yielding an income sufficient to pay the outstanding debts and charges for the payment of which the sale is asked, before such sale could be made and confirmed, or if resisted, could be the subject of review on appeal. In such case, there would be no necessity for any sale. And the income, though not sufficient for the payment of the entire amount of these debts and charges, may be sufficient to pay the greater portion of them. In this case, the necessity for the sale would be limited to such portions—supposing there were more than one parcel—as would make up the deficiency. The necessity must appear, before the court can take any jurisdiction and act upon the petition. And this necessity must appear, not by mere averment, but by an exhibition of the real property of the deceased. The necessity is a conclusion which the court must draw for itself from the facts stated. It is not a matter for the executor or administrator to determine; it is a matter for the court, and the petition must, therefore, furnish the materials for its judgment. These consist in the description which the

statute provides the petition shall set forth, 'of all the real estate of which the testator or intestate died seized, and the condition and value of the respective portions and lots.' (§ 155.) A compliance with the statute in this particular is, then, essential to the jurisdiction of the court, as without it the court cannot judge of the necessity of the sale asked; and in this view, we do not perceive how it can be dispensed with from the petition, any more than the statement as to the personal property and the outstanding debts.''

It was held that the sale was void. The relevant California statute provided that a petition for sale addressed to the probate court should set forth the amount of the personal estate, debts outstanding, a description of all of the real estate of which the testator died seized and the condition and value of the prospective portions and lots and other matters. The case of *Wright and Jones v. Edwards,* 10 Or. 298, was decided by this court in an opinion by Lord, J. The case was a collateral attack upon the validity of an administrator's sale. The duly appointed administrator filed a petition for sale which did not describe the real property to be sold, its condition or value. There were other defects which need not be noticed. The court said:

''While the constitution provides that the county court shall have jurisdiction pertaining to probate courts, its authority to order the sale of real property of an intestate is derived wholly from the statute. The proceedings are required to be in writing, and the powers of the court are brought into action by means of an affidavit or verified petition of the administrator. (Code, sec. 1046.) But the cases in which the power of the court may be exercised to order the sale of real property are specially designated in the statute, and the implication is, it can be exercised in no other. * * *''

The court held that when an order is made after jurisdiction has attached, it cannot be questioned collaterally, but:

"* * * if it act without jurisdiction, its order or decree is a nullity; it confers no right or title, and cannot be asserted as a defense to bar a recovery. 'No court, no matter how general its jurisdiction may be, which proceeds without jurisdiction in the particular case, can make a valid record, or confer any right or title.'

"The statute points out with great particularity the conditions which must exist to invoke the jurisdiction of the court, and the facts necessary to be set forth by averment in the petition by the administrator to exhibit that condition of things to the court, and to bring the real property sought to be applied to the payment of debts, within the jurisdiction of the court, by describing it, thereby identifying it, as well as its condition and probable value. When the proceeds of the sale of the personal property are exhausted, and claims still remain unsatisfied, a condition of things exist which authorize a resort to the real estate to discharge them. But the mere existence of such facts do not confer jurisdiction—they only present a case which authorizes the administrator to invoke the jurisdiction of the court. To confer actual jurisdiction, the jurisdictional power of the court must be brought into action by the averment of necessary facts in the petition which exhibit the necessity for the sale. * * *"

The court then quoted with approval from *Haynes v. Meeks,* supra, and said:

"* * * The petition is the commencement of the proceeding, and the jurisdiction of the court rests upon the sufficiency of the facts. The cause becomes coram judice only when the petition presents such a state of facts as authorizes the court to deliberate and act.

"* * * But, conceding *in some sense* the proceeding is in the nature of an action in rem, how can the jurisdiction of the court operate upon the lands of the intestate when none are described—none identified upon which such jurisdiction can operate; or how can it operate to divest the title of heirs by a sale of their lands for which sale no lands are described and petitioned to be sold, and for which, consequently, there is no petition. (Townsend v. Gordon, 19 Cal., 208; Haynes v. Meeks, 20 Cal., 314.) By describing the land—the other material facts appearing by sufficient allegation—it is identified and subjected to the jurisdiction of the court. It is true that vagueness, inaccuracy, or mistake in the description of lands will not vitiate the proceeding and render the sale a nullity when collaterally assailed, and rights of property have attached. The courts very properly hold, when jurisdiction has attached by the statement of proper facts, although defectively alleged, and by some inadvertence the lands are imperfectly described, the sale cannot be collaterally attacked and the rights of innocent purchasers imperiled. In such case there is matter of substance to challenge the jurisdiction of the court, and to cause it to deliberate and act. But that is not this case. Here, it is not the defective statement of material facts, or a petition in some material respect defective, but a total want of statement of any essential facts necessary to give jurisdiction. The difference is, between a petition with facts and one without them—or, in other words, no petition at all. Nor do any of the authorities to which we have had access undertake to uphold sales against collateral assault when the petition affirmatively discloses an entire want of any statement of facts essential to give jurisdiction."

Again the court said:

"* * * But the case is different where there is an entire want of facts, pre-requisite to jurisdiction, disclosed upon the face of the petition. Then the

want of jurisdiction affirmatively appears and the sale cannot be upheld when collaterally assailed. In such case there is no room to indulge presumption. The petition is not silent—it speaks for itself. It shows what was required to be done to give jurisdiction was not done, and it is useless to look beyond. The authority of the court to act is wanting and the proceedings are a nullity. The distinction between inferior and superior courts have no application here, for all courts, before their proceedings can have any validity, or can confer any rights, must have jurisdiction to act. The proceeding is in derogation of common law—statutory alone, with its boundaries mapped out and ascertained. * * *"

*Wright and Jones v. Edwards,* supra, was cited and applied in *Walker v. Goldsmith,* 14 Or. 125, 12 P. 537; *Lawrey v. Sterling,* 41 Or. 518, 69 P. 460; *Smith v. Whiting,* 55 Or. 393, 106 P. 791. In *Yeaton v. Barnhart,* 78 Or. 249, 150 P. 742, 152 P. 1192, the court said:

"An application for leave to sell real property is in the nature of an independent proceeding, in which the jurisdiction of the County Court to grant the relief desired must depend upon the sufficiency of the petition which, in order to defeat a direct attack, must substantially comply with the requirements of the statute. That court being a tribunal having general jurisdiction in probate matters, it would seem necessarily to follow that, if the application for leave to sell were lost, the order directing the sale would afford the requisite presumption that the petition contained the necessary averments. If it affirmatively appear from an inspection of a petition that it failed to show any necessity for the sale, or to describe the real property desired to be disposed of, jurisdiction of the subject matter would not thereby be secured and the order of sale must be void and vulnerable on collateral attack, since the proceedings to sell the land were probably in the nature of an application for an exercise of a special

statutory power: Wright & Jones v. Edwards, 10 Or. 298, 307; In re Noon's Estate, 49 Or. 286 (88 Pac. 673, 90 Pac. 673)."

■ In harmony with the decisions above cited, we hold that the court never acquired jurisdiction owing to the insufficiency of the petition for sale and that the sale is therefore void upon this collateral attack. It follows that the defendants Mumford have no standing to challenge the validity of the proceedings for the foreclosure of the mortgage. We therefore turn to a consideration of the case as between the plaintiff and Pearl S. Matthes, administratrix.

■ The note and mortgage were dated 31 October 1931. The note matured on 31 October 1933. The plaintiff testified directly that in September 1940 $50 was paid to her by the maker of the note and was applied against accrued interest. The suit to foreclose the mortgage was brought in July, 1946. The trial court found that the note was valid, that the $50 payment was made as claimed, and we think the evidence supports those findings. Under the circumstances, there being no assignments of error, the decree of foreclosure must be affirmed. The decree establishes the validity of the note and the priority of the mortgage as against the administratrix, the estate and its creditors, and provides that if sufficient money is not derived from the sale to pay the debt, costs and attorney's fees, that the amount not derived from the sale shall be a judgment against the administratrix.

■ Owing to the unfortunate fact that the suit was dismissed as to Pearl S. Matthes individually, the decree cannot bind her in her individual capacity. There is a sharp conflict in the testimony as to the terms of an agreement of 24 October 1941. Pearl S. Matthes

claims that as an individual she gave to the plaintiff a quit-claim deed covering the property described in the complaint in consideration of $500 paid to her by the plaintiff, and of an agreement by plaintiff to cancel the note and mortgage. There is persuasive testimony, however, that there were additional provisions in the agreement which led up to the giving of the quit-claim deed; namely, an agreement whereby Pearl S. Matthes was to promptly pay the few remaining bills against the estate and confirm the title conveyed by the quit-claim deed, and it is claimed that Pearl S. Matthes violated her agreement by failing to close the estate and to confirm the plaintiff's title, and that she wrongfully waited five years and then attempted to sell the property at an administratrix' sale, having made no accounting in the meantime. What this agreement was, and whether it was breached; whether, as between the plaintiff and Pearl S. Matthes the plaintiff is entitled to claim under both the quit-claim deed and under the mortgage, on the theory that it was to the plaintiff's interest to prevent a merger of the two rights, or whether suit upon the mortgage prevents any claim under the quit-claim deed, and if so, whether plaintiff is entitled to recover back the $500 paid therefor—these are all questions which we cannot adjudicate because Pearl S. Matthes is not a party. Since we cannot adjudicate those questions, we cannot determine whether Pearl S. Matthes individually, has any dower right, or right as heir of her husband, which could now be maintained, as against the plaintiff's mortgage. The decree of the circuit court is affirmed as to the defendants Mumford and as to the defendant Pearl S. Matthes as administratrix.